756 So.2d 862 (1999)
Ex parte David R. PANELL.
(Re David R. Panell v. R. Kent Henslee).
No. 1962076.
Supreme Court of Alabama.
December 30, 1999.
Ralph E. Coleman of Coleman & Friday, Birmingham, for petitioner.
Larry W. Harper and W. Perry Webb of Porterfield, Harper & Mills, P.A., Birmingham, for respondent.

On Application for Rehearing
SEE, Justice.
The opinion of August 6, 1999, is withdrawn, and the following opinion is substituted therefor.
David Panell filed this legal-malpractice action under the Alabama Legal Services Liability Act ("ALSLA"), Ala.Code 1975, § 6-5-571 through § 6-5-581, against Kent Henslee, an attorney who had represented Panell in a lawsuit arising out of a dispute concerning the operation of a business. Panell alleges that Henslee acted negligently in the course of the lawsuit by agreeing to a settlement without Panell's consent and by failing initially to file a claim and later to file a counterclaim on Panell's behalf. Henslee moved for a summary judgment, arguing that Panell's *863 claims were barred by the two-year statute of limitations in the ALSLA, § 6-5-574. The trial court granted Henslee's motion, on the ground that Panell's claims were barred by that statute. The Court of Civil Appeals, on July 25, 1997, affirmed Henslee's summary judgment, without an opinion. Panell v. Henslee, 723 So.2d 117 (Ala. Civ.App.1997) (table). This Court granted Panell's petition for the writ of certiorari to review the narrow issue of when Panell's legal-malpractice cause of action accrued and when the statute-of-limitations period provided by the ALSLA began to run. We agree that Panell's legal-malpractice action was barred by the statute of limitations, § 6-5-574. Therefore, we affirm.

I.
Viewed in the light most favorable to the nonmovant, Panell, the evidence indicates the following facts. Panell and Dr. Dan Sparks were shareholders of Village Enterprises, Inc. Panell alleges that in March 1993 he hired Henslee to file against Sparks an action concerning the corporation. In June 1993, before Henslee filed Panell's action, Sparks filed an action against Panell. Sparks claimed a breach of contract and sought the dissolution of Village Enterprises, Inc. Panell alleges that after the action was filed against him, he instructed Henslee to file an answer and a counterclaim asserting the claims that he had originally asked Henslee to file. Henslee did not file either an answer or a counterclaim, but he did file a motion to dismiss Sparks's complaint. On September 22, 1993, the trial court held a hearing on the motion to dismiss. During that hearing, Henslee discussed settlement with Sparks's attorney. Panell alleges that Henslee would not let him enter the courtroom during the hearing and that on September 22, 1993, without Panell's consent, Henslee agreed to a settlement that allowed Sparks to receive all the assets of Village Enterprises, Inc. Panell never signed any settlement-agreement documents. On October 5, 1993, in accordance with the terms of the alleged settlement agreement, Panell, under protest he says, executed warranty deeds conveying his interest in certain real property to Sparks. On January 31, 1994, the trial court noted on the case action summary sheet that the case had been settled. On August 18, 1994, the trial court dismissed the case.
On January 30, 1996, Panell filed this legal-malpractice action against Henslee. He claims that Henslee committed legal malpractice by failing to file the counterclaim against Sparks and by agreeing to the settlement without Panell's authorization.

II.
This Court reviews a summary judgment by the same standard the trial court uses in determining whether to grant a summary-judgment motion. See Pryor v. Brown & Root USA, Inc., 674 So.2d 45, 47 (Ala.1995). The summary judgment was properly entered in this case if there was no genuine issue of material fact and if Henslee was entitled to a judgment as a matter of law. See Rule 56(c)(3), Ala. R. Civ. P. Henslee had the burden of making a prima facie showing that there was no genuine issue of material fact and that he was entitled to a judgment as a matter of law. See Berner v. Caldwell, 543 So.2d 686, 688 (Ala.1989). If Henslee made that prima facie showing, then the burden shifted to Panell to present substantial evidence creating a genuine issue of material fact in order to avoid the entry of a judgment against him. See Pryor, 674 So.2d at 47; see also Ala.Code 1975, § 12-21-12. In determining whether there was a genuine issue of material fact, this Court must review the record in the light most favorable to Panell and must resolve all reasonable doubts against Henslee. See Pryor, 674 So.2d at 47. Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
*864 Panell contends that the Court of Civil Appeals erred in affirming the summary judgment in favor of Henslee because, he argues, the two-year statute-of-limitations period had not yet expired as of January 30, 1996, when he filed this action. Although Henslee's specific act of alleged misconduct occurred on September 22, 1993, when he agreed to the settlement on behalf of Panell, Panell contends that his cause of action against Henslee did not accrue until January 31, 1994, the date the trial court entered the notation on the case action summary sheet stating that the case had been settled, or until August 18, 1994, the date on which the trial court entered its judgment of dismissal. Panell argues that he suffered no legal injury until the trial court entered its judgment. Henslee responds by arguing that Panell's cause of action accrued on September 22, 1993, when Henslee agreed to settle the case, or on October 5, 1993, when Panell signed the warranty deeds transferring the property to Sparks.
Before 1987, the time within which a plaintiff could file a legal-malpractice action was governed by Ala.Code 1975, § 6-2-30 and § 6-2-34. Section 6-2-30 provides in pertinent part:
"(a) All civil actions must be commenced after the cause of action has accrued within the period prescribed in this article [Article 2, `Time Provisions'] and not afterwards, unless otherwise specifically provided for in this code."
Section 6-2-34 (also appearing in Article 2) provides in pertinent part:
"The following must be commenced within six years:
". . . .
"(8) Motions and other actions against attorneys-at-law for failure to pay over money of their clients or for neglect or omission of duty...."
In Cofield v. Smith, 495 So.2d 61, 62 (Ala. 1986), this Court held that under § 6-2-30 and § 6-2-34 the statute-of-limitations period for a legal-malpractice cause of action begins to run from the "time that the plaintiff would have first suffered a legal injury for which he would have been entitled to commence an action for damages against the [attorney]." In Cofield, this Court relied on and quoted Payne v. Alabama Cemetery Ass'n, Inc., 413 So.2d 1067 (Ala.1982), which analyzed Alabama caselaw relating generally to the accrual of a cause of action:
"`[T]he statute of limitations begins to run in favor of the party liable from the time the cause of action accrues, and the cause of action accrues as soon as the party in whose favor it arises is entitled to maintain an action thereon. The plaintiff's ignorance of a tort or injury does not postpone the running of the statute of limitations until that tort is discovered....
"`The statute, however, will not begin to run until some injury occurs which gives rise to a maintainable cause of action.... In [legal-malpractice actions], the act complained of does not itself inflict a legal injury at the time it is done, but plaintiff's injury only follows as a result and a subsequent development of the defendant's act. "In such cases, the cause of action `accrues,' and the statute of limitation[s] begins to run, `when and only when, the damages are sustained.'"'"
495 So.2d at 62 (quoting Payne, 413 So.2d at 1072 (quoting Garrett v. Raytheon Co., 368 So.2d 516, 519 (Ala.1979))) (internal citations omitted).
In 1987, the year after this Court decided Cofield, the Legislature enacted the ALSLA. Section 6-5-574 of the ALSLA establishes a two-year limitations period for a legal-malpractice cause of action and specifies when that period begins to run:
"(a) All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the *865 action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided, further, that in no event may the action be commenced more than four years after such act or omission or failure...."
Ala.Code 1975, § 6-5-574(a) (emphasis added). Thus, in the ALSLA the Legislature changed both the limitations period from six years to two yearsand the starting point of the limitations period allowed for a legal-malpractice cause of actionfrom the time the client first suffers actual damage (the rule under Cofield) to the time of "the act or omission or failure giving rise to the claim." Despite the clear language of § 6-5-574(a), this Court in Michael v. Beasley, 583 So.2d 245, 252 (Ala.1991), held that the statute-of-limitations period established by § 6-5-574(a) begins to run "from the date of the accrual of a cause of action and not from the date of the occurrence of the act or omission." (Emphasis added.) In reaching this conclusion, the Court relied on Cofield and its interpretation of the statute of limitations applicable before 1987 and not on the language of § 6-5-574(a). Michael, 583 So.2d at 251-52.
In Ex parte Burnham, Klinefelter, Halsey, Jones & Cater, P.C., 674 So.2d 1287, 1289 (Ala.1995), another legal-malpractice case, this Court modified the rule established in Cofield and followed in Michael. The Court of Civil Appeals had held in that case that "when the malpractice action is based upon the attorney's alleged negligence in an earlier action, the rule is that the plaintiff in the malpractice action is held to have suffered no injury or harm in the earlier action until there was a final adverse judgment in the earlier action." Russell v. Burnham, Klinefelter, Halsey, Jones & Cater, P.C., 674 So.2d 1285, 1286 (Ala.Civ.App.1995). The Court of Civil Appeals, therefore, concluded that the plaintiff's legal-malpractice cause of action did not accrue "until the consent judgment was entered against [her]". Id. On certiorari review, this Court reversed the judgment of the Court of Civil Appeals. This Court drew a distinction, for purposes of determining when a legal-malpractice cause of action accrues, between those situations in which an attorney is hired to file an action and those situations in which an attorney is hired to defend one:
"In [those] situations [where an attorney is hired to sue on behalf of the client], there can normally be no legal damage suffered until an adverse or insufficient judgment is entered against the person injured by his or her attorney's negligence. However, in the situation where an attorney is hired to defend a lawsuit, a negligent act by the attorney, especially during settlement negotiations, not only exposes the client to a potential adverse judgment, but also can expose the client to additional legal fees that would not have been otherwise incurred."
Ex parte Burnham, Klinefelter, Halsey, Jones & Cater, P.C., 674 So.2d at 1289. Thus, this Court concluded that the plaintiff's defensive-representation legal-malpractice cause of action accrued not when the consent judgment was ultimately entered against her, but earlier, when she first suffered mental anguish as a result of the attorney's failure to settle her case. See id. at 1290. Although this Court in Burnham distinguished legal-malpractice causes of action involving "offensive representation" from those involving "defensive representation," in doing so this Court relied on the pre-1987 rule of Cofield that a legal-malpractice cause of action accrues and the statute-of-limitations period begins to run "`"`when and only when, the damages are sustained'"'" by the client. Id. (quoting Cofield, 495 So.2d at 62 (quoting Payne, 413 So.2d at 1072 (quoting Garrett v. Raytheon Co., 368 So.2d 516, 519 (Ala. 1979)))).
This line of cases ignores the significance of the "act or omission or failure" language of § 6-5-574(a). The Supreme Court of Nebraska, in Rosnick v. Marks, 218 Neb. 499, 357 N.W.2d 186 (1984), addressed *866 the same issue that we have before us in this case. In Rosnick, the Nebraska court construed Nebraska's statute of limitations applicable to a legal-malpractice cause of action, Neb.Rev.Stat. Ann. § 25-222. That statute is similar to Alabama's § 6-5-574(a). The Nebraska statute provides:
"Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; Provided, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; and provided further, that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action."
(Emphasis added in the first clause.) The Nebraska Supreme Court discussed the distinction between the "damage rule" (as typified by the holding in Cofield), which provides that a cause of action for legal malpractice accrues, and the statute-of-limitations period begins to run, when the client sustains actual damage, and the "occurrence rule," which provides that a cause of action for legal malpractice accrues, and the statute-of-limitations period begins to run, upon the occurrence of the tortious act or omission. See Rosnick, 218 Neb. at 502-05, 357 N.W.2d at 189-91. See generally Francis M. Dougherty, When Statute of Limitations Begins to Run upon Action Against Attorney for Malpractice, 32 A.L.R.4th 260 (1984) (identifying those jurisdictions that follow the "damage rule" and those jurisdictions that follow the "occurrence rule"). Based on the "alleged act or omission" language in § 25-222, the Supreme Court of Nebraska held that a client's legal-malpractice cause of action accrues, and the statute-of-limitations period begins to run, when the tortious act or omission occurs and not when the client sustains actual damage. See Rosnick, 218 Neb. at 505, 357 N.W.2d at 190. We find the Rosnick rationale instructive:
"In conjunction with § 25-222 every professional has a duty to render services in a reasonable and prudent manner. A negligent breach of that professional duty invades a legal right of one entitled to receive negligence-free services. Thus, tortious invasion of another's legal right is the triggering device for the statute of limitations. This situation has been characterized as the occurrence rule, in contrast with the damage rule illustrated by Budd v. Nixen, 6 Cal.3d 195, 491 P.2d 433, 98 Cal.Rptr. 849 (1971). Even those jurisdictions espousing the damage rule recognize that a statute of limitations can be triggered at some time before the full extent of damages is sustained. See Jankowski v. Taylor, Bishop & Lee, 246 Ga. 804, 273 S.E.2d 16 (1980); cf. Budd v. Nixen, supra, [6 Cal.3d] at 201, 491 P.2d at 436, 98 Cal.Rptr. at 852: `Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.'
"Legislatures have profound impact on statutes of limitations. The Legislature of Nebraska is no exception. In formulating the statute of limitations for actions based on professional negligence, Nebraska's Legislature has expressly stated that such actions `shall be commenced within two years next after the alleged act or omission.' When it selected the language `act or omission' found in § 25-222, the Nebraska Legislature rejected actual damage as the index for inception of the time limit for a suit based on malpractice. Had the Nebraska *867 Legislature desired actual damage to be an element of the statute of limitations under examination, and at the risk of emphasizing the obvious, the patently simple legislative course would have been insertion of such terminology into the statute, that is, malpractice actions `shall be commenced within two years next after actual damage has been sustained by the claimant.' However, this court cannot indulge in substitutional injection of `actual damage' into the malpractice statute of limitations, a phrase which would render `alleged act or omission' meaningless and repudiate the manifest legislative intent found in the unambiguous language of § 25-222. In utilizing the language found in § 25-222, the Nebraska Legislature has opted for the occurrence rule, tempered or ameliorated by a provision for discovery."
218 Neb. at 505-06, 357 N.W.2d at 189-91 (emphasis added).
Just as the Nebraska Legislature rejected the damage rule for the accrual of a legal-malpractice cause of action, the Alabama Legislature, by adopting the "act or omission or failure" language in § 6-5-574, rejected the damage rule set out in Cofield. This Court is bound by the unambiguous language of § 6-5-574(a) and must give effect to that language and the express intent of the Legislature in enacting the ALSLA. The Legislature expressly stated that a crisis existed that threatened the delivery of, jeopardized the availability and quality of, and increased the cost of legal services to the people of Alabama and that that crisis was the direct result of the "increasing threat" of legal-malpractice actions. Ala.Code 1975, § 6-5-570. To remedy this crisis, the Legislature "establish[ed] a comprehensive system governing all legal actions against legal service providers." Id. As part of that comprehensive solution, the Legislature "create[d] a new and single form of action and cause of action exclusively governing the liability of legal service providers known as the legal service liability action and provide[d] for the time in which a legal service liability action may be brought and maintained." Id.
This Court must construe § 6-5-574 in light of the Legislature's express intent and purpose in enacting the ALSLA. Thus, this Court must presume that when the Legislature enacted the ALSLA in 1987 it was aware of the pre-1987 damage rule of Cofield and that it intended to replace that rule with the "after the act or omission or failure" language of § 6-5-574(a) (emphasis added). See Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 297 (Ala.1998) ("It is a familiar principle of statutory interpretation that the Legislature, in enacting new legislation, is presumed to know the existing law."); Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997) ("`There is a presumption that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.'") (quoting 82 C.J.S. Statutes § 316 (1953)), cert. denied, 708 So.2d 911 (Ala.1997). Although the Legislature could have simply replaced the provision setting a six-year limitations period with a provision setting a two-year limitations period and left unchanged the rule of Cofield, it did not.
Further evidencing that the Legislature intended to replace the pre-1987 damage rule of Cofield with an occurrence rule is the ameliorative discovery provision of § 6-5-574. Section 6-5-574(a) provides a six-month extension to the two-year limitations period where "the cause of action is not discovered and could not reasonably have been discovered within such period."
Finally, § 6-5-574 provides that a legal-malpractice action must be filed within four years of the wrongful act or omission, regardless of whether the client has suffered damage. Section 6-5-574(a) clearly provides that "in no event may the action be commenced more than four years after [the] act or omission or failure" giving rise to the claim has occurred. (Emphasis *868 added.) Therefore, a legal-malpractice cause of action accrues, and the statute-of-limitations period begins to run, when "the act or omission or failure giving rise to the claim" occurs, and not when the client first suffers actual damage.[1] Ala.Code 1975, § 6-5-574(a).
This construction of § 6-5-574 gives the language its plain meaning and effectuates the intent of the Legislature. See City of Montgomery v. Water Works & Sanitary Sewer Bd., 660 So.2d 588, 592 (Ala.1995) (requiring that words used in a statute be given their natural, plain, ordinary, and commonly understood meaning); Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n, 589 So.2d 687, 689 (Ala. 1991) (stating that where plain language is used, a court is bound to interpret that language to mean exactly what it says); see also Elder v. State, 162 Ala. 41, 45, 50 So. 370, 371 (1909) (stating that it is unreasonable to hold that the Legislature employed meaningless words); McDonald v. State, 32 Ala.App. 606, 609, 28 So.2d 805, 807 (1947) ("A legislature will not be presumed to use language without any meaning or application...."). Accordingly, *869 that part of Michael holding that under the ALSLA a legal-malpractice cause of action accrues, and the statute-of-limitations period begins to run, when the client first suffers actual damage was a misconstruction of the ALSLA. Because the rule stated in this opinion would change this Court's construction of the limitations provision of § 6-5-547(a) and reject its previous construction of the statute, a construction Panell may have relied on, we would apply this new rule prospectively only, i.e., to legal-malpractice actions filed after the date of this decision. See Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 351-52 (Ala.1997); Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala.1997); McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156, 165-66 (Ala.1996).

III.
Although we would not apply the new construction of § 6-5-574(a) to the litigants in this case, under the prior construction adopted in Michael we reach the same conclusionthat Panell's legal-malpractice action is barred under § 6-5-574(a). Under the rule of Michael, Panell's legal-malpractice cause of action accrued, and, thus, the statute-of-limitations period began to run, on September 23, 1993, the day after Henslee allegedly accepted a settlement offer without Panell's approval. On that day, Henslee reduced the proposed settlement to writing, in the form of a letter to opposing counsel. That letter was a "writing," such as is contemplated in Ala.Code 1975, § 34-3-21, which states: "An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court."[2] (Emphasis added.) Furthermore, on that day, the settlement terminated the litigation, and once Panell was bound by the settlement, he could no longer file a counterclaim. Thus, on September 23, 1993, Panell "sustained a legal injury sufficient for [him] to maintain an action against [Henslee]." Michael, 583 So.2d at 252. Panell did not sue Henslee until January 30, 1996. Therefore, Panell did not file his action within the two-year period allowed by § 6-5-574(a) for commencing a legal-malpractice action. The trial court properly entered the summary judgment for Henslee, and the Court of Civil Appeals properly affirmed that judgment. The judgment of the Court of Civil Appeals is affirmed.
OPINION OF AUGUST 6, 1999, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
HOOPER, C.J., and MADDOX, J., concur.
HOUSTON, BROWN, and ENGLAND, JJ., concur in the result.
COOK, LYONS, and JOHNSTONE, JJ., concur in the result but dissent from the rationale.
COOK, Justice (concurring in the result, but dissenting from the rationale).
I concur in the affirmance of the judgment of the Court of Civil Appeals, which had affirmed the trial court's summary judgment in favor of Kent Henslee in this legal-malpractice action commenced against him by David Panell. The main opinion is correct in only one respect Panell's action is barred by the statute of limitations found in Ala.Code 1975, § 6-5-574. That section of the Alabama Legal Services Liability Act provides in pertinent part:
"(a) All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery, *870 or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided, further, that in no event may the action be commenced more than four years after such act or omission or failure...."
I dissent from the rationale of the main opinion for a number of reasons. First, I am not sure I know what the opinion means. It concludes that this Court wrongly decided Michael v. Beasley, 583 So.2d 245 (Ala.1991), which held that the running of the statutory limitations period in a legal-malpractice action is triggered by the accrual of the plaintiff's cause of action. The main opinion seems to find fault with that formulation and would replace it with a rule pursuant to which the limitations period begins to run when the act or omission occurs, declaring that application of the term "act or omission" in the amended statute to be different from the concept of accrual of a cause of action. I suspect the bench and bar would have great difficulty in applying this new rule, especially given that it is not necessary to have this disconnect to occur between "act or omission" and "accrual of the cause of action."
Second, those joining the main opinion appear to be laboring under some misapprehension as to what Michael requires. They seem to read Michael as setting forth a bright-line rule requiring the entry of a final judgment as a threshold event sufficient to trigger the running of the limitations period. However, Michael contains no such holding, and I know of no case applying Michael that has established such a bright-line rule.
On the contrary, in Ex parte Burnham, Klinefelter, Halsey, Jones & Cater, P.C., 674 So.2d 1287, 1289 (Ala.1995), this Court held that the plaintiff's cause of action accrued with the expiration of a settlement offer. Id. at 1290. In doing so, it did notas the main opinion impliesretreat from the Michael rule. Instead, it quoted Michael with approval and applied it. Burnham, 674 So.2d at 1289. Moreover, it quoted with approval and applied Cofield v. Smith, 495 So.2d 61 (Ala.1986), a case on which Michael relied. Burnham, 674 So.2d at 1289-90; see also Michael, 583 So.2d at 251.
Indeed, based on my understanding of the rule as it has existed since Michael, I conclude that Panell's action is barred. That is so, because, as the main opinion states:
"Under the rule of Michael, Panell's legal-malpractice cause of action accrued, and, thus, the statute-of-limitations period began to run, on September 23, 1993, the day after Henslee allegedly accepted a settlement offer without Panell's approval. On that day, Henslee reduced the proposed settlement to writing, in the form of a letter to opposing counsel. That letter was a `writing,' such as is contemplated in Ala.Code 1975, § 34-3-21, which states: `An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court.' (Emphasis added.) Furthermore, on that day, the settlement terminated the litigation, and once Panell was bound by the settlement, he could no longer file a counterclaim. Thus, on September 23, 1993, Panell `sustained a legal injury sufficient for [him] to maintain an action against [Henslee].' Michael, 583 So.2d at 252. Panell did not sue Henslee until January 30, 1996. Therefore, because Panell did not file his action within the two-year period allowed by § 6-5-574(a) for commencing a legal-malpractice action, the trial court properly entered the summary judgment for Henslee, and the Court of Civil Appeals properly affirmed that judgment."
756 So.2d at 869 (footnote omitted). It is, therefore, unnecessary to overrule Michael in order to reach the result reached by the main opinion.
Third, some of the language in the main opinion seems to suggest that the limitations period could begin to run before, or, *871 in fact, whether or not, a cause of action ever accrues. More specifically, that opinion states: "Accordingly, that part of Michael holding that under the ALSLA a legal-malpractice cause of action accrues, and the statute-of-limitations period begins to run, when the client first suffers actual damage was a misconstruction of the ALSLA." 756 So.2d at 868-69. It is unclear what the main opinion intends with respect to the accrual of a cause of action. Indeed, it suggests that the limitations period may commence before, or without, the accrual of a cause of action or the plaintiff's incurring a legal injury.
The well-established principles regarding the accrual of a cause of action, generally, are explained as follows:
"A cause of action accrues when the party in whose favor it arises is entitled to maintain an action....
"... `If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed....' [I]n situations where the act itself is not a legal injury, not a completed wrong, and the plaintiff's injury comes only as a result of what the defendant has done, the cause of action accrues and the limitations period begins to run when damage is sustained."
System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419, 421 (Ala.1996). Section 6-5-574(a) as written and as interpreted in Michaelis fully consistent with these principles.[3]
However, if, as some of the language in the main opinion suggests, that opinion is intended to sever the connection between the act or omission and the cause of action, that is, to authorize a malpractice action regardless of whether the act or omission of which the client complains ever ripens to a cause of action, then I most strenuously dissent. Such an approach would be nonsensical, because it is axiomatic that a plaintiff cannot maintain an action until he has a cause of action. Thus, the limitations period could, not only run, but, expire, before the plaintiff ever had a right to maintain an action. Moreover, it would be impossible to calculate the terminus a quo from which to calculate the running of the limitations period, that is, to determine what event triggered the running of the limitations period.
This difficulty is particularly acute in legal-malpractice actions, because of the nature of legal representation. Litigation is a protracted process. In the normal give and take of litigation, a party may gain, lose, and regain the advantage repeatedly. One who is "proclaimed" the "winner" at the trial court level, may, in the final analysis, lose all on appeal. Indeed, neither the parties nor their representatives can be charged with foreknowledge of whether the opposition will appeal a final judgment, or of what an appellate court will do if it does.
These difficulties were clearly exemplified in Cantrell v. Stewart, 628 So.2d 543 (Ala.1993); and Brewer v. Davis, 593 So.2d 67 (Ala.1991). In both cases, this Court held that the plaintiff's legal-malpractice cause of action did not accrue, and, consequently, that the limitations period did not commence to run, until the merits of the underlying cause were resolved on appeal. Although those cases were correct on their facts and were well reasoned, their authority could be called into question by today's main opinion.
I do not find fault with the main opinion insofar as it states that the "`statute of *872 limitations can be triggered at some time before the full extent of damages is sustained.'" 756 So.2d at 866. (Quoting Rosnick v. Marks, 218 Neb. 499, 505, 357 N.W.2d 186, 190 (1984)). However, this explanation does not resolve my criticism of the theory espoused in the main opinion, because under that theory the limitations period could begin to run, and could expire, before any damages are sustained. The following rather common scenario portrays my point:
A plaintiff sues multiple defendants. The complaint contains fictitious-party allegations. After the original limitations period expires, the plaintiff's lawyer moves to amend to substitute Defendant X, a material party, for one of the fictitious parties. The plaintiff learns 1 year, 11 months, and 29 days after the original limitations period has expired that Defendant X has not been brought into the lawsuit. The plaintiff has suffered no damage at this juncture, and a cause of action has not accrued. The plaintiff would suffer damage only if the amendment is not allowed. However, under the rationale of the main opinion, the plaintiff would have to file a legal-malpractice complaint immediately, because the act or omission giving rise to the claim was the failure to add Defendant X before the running of the original limitations period. This would be the result if, as the language of the main opinion suggests, that opinion operates to sever the connection between the act or omission and the cause of action.
In summary, today's opinion will only, at best, create confusion. At worst, it would make it impossible to determine when the limitations period begins to run on professional-malpractice claims.[4] For these reasons, I concur in the result, but dissent from the rationale.
LYONS, Justice (concurring in the result, but dissenting from the rationale).
I have come to the same conclusion as Justice Cook, but by a different road. I therefore concur in the affirmance of the judgment of the Court of Civil Appeals, which affirmed the trial court's summary judgment in favor of Kent Henslee in this legal-malpractice action commenced against him by David Panell, but I dissent from the rationale of the main opinion.
I would construe the statute-of-limitations provision of the Alabama Legal Services Liability Act ("ALSLA"), § 6-5-574, Ala.Code 1975, to mean that the limitations period begins to run on the date the injury or harm occurs and not on the date of the occurrence of the act that caused the injury or harm. I conclude that Panell's injury or harm would have occurred when Henslee accepted the settlement offer without Panell's authorization. This action was filed more than two years after that event.
Section 6-5-574 states that the date of "the act or omission or failure giving rise to the claim" is the starting date of the limitations period. It does not speak of the date of the accrual of a cause of action as being the relevant date for limitations purposes. Under principles applicable to the accrual of a cause of action, when an act does not inflict immediate damage or injury no cause of action accrues as a result of that act until damage or injury is sustained as a result of it. Payne v. Alabama Cemetery Ass'n, Inc., 413 So.2d 1067, 1072 (Ala.1982). The main opinion would hold that the plain language of the statute prevents a construction whereby the starting point of the limitations period is the occurrence of an act coupled with an injury. While one could make a strong case for the proposition that the text of the statute standing alone compels the interpretation *873 given it by the main opinion, I do not think the rules of statutory construction permit us to adopt that interpretation.
We find language governing the starting point of the limitations period in the Alabama Medical Liability Act, at § 6-5-482(a), Ala.Code 1975. That Act became effective in 1975, and it has repeatedly been construed to mean that the limitations period begins to run upon the accrual of an action. See, e.g., Ramey v. Guyton, 394 So.2d 2, 4 (Ala.1980), where the Court held:
"We find it patently unreasonable to attempt to fix the accrual date at the time the prescription was written, which act produced no concurrent injury to the Plaintiff."
Ramey was followed in Guthrie v. Bio-Medical Laboratories, Inc., 442 So.2d 92, 95 (Ala.1983).
When the very similar language of § 6-5-574 was adopted in 1988, the construction of the language in § 6-5-482(a) was well settled. When the wording of a statute has been construed by this Court and the statute is later reenacted without material change in the language construed, the construction previously given that language must be accepted as part of the statute. Hamm v. Harrigan, 278 Ala. 372, 178 So.2d 529, rehearing stricken, 278 Ala. 521, 179 So.2d 154 (1965), cert. denied, 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966). Here, the Legislature enacted in the ALSLA substantially the same language it had used in the Alabama Medical Liability Act dealing with the question of what event triggered the running of the limitations period. Of course, when this language appears in the ALSLA it has a different field of application. While this situation is not the same as that presented in Hamm, where the reenacted statute dealt entirely with the same subject matter, no different rule of construction should apply. See Fusco v. Perini North River Associates, 601 F.2d 659, 664 (2d Cir.1979), vacated on other grounds, 444 U.S. 1028, 100 S.Ct. 697, 62 L.Ed.2d 664 (1980):
"[W]hen a legislature borrows an already judicially interpreted phrase from an old statute to use it in a new statute, it is presumed that the legislature intends to adopt not merely the old phrase but the judicial construction of that phrase."
See, also, Burnet v. Harmel, 287 U.S. 103, 108, 53 S.Ct. 74, 77 L.Ed. 199 (1932); Long v. Director, Office of Workers' Compensation Programs, 767 F.2d 1578, 1581 (9th Cir.1985); Harper v. Southern Coal & Coke Co., 73 F.2d 792, 794 (5th Cir.1934).
Without regard to the fact that the Legislature has not amended § 6-5-574 in any of the several legislative sessions held since this Court issued its opinion in Michael v. Beasley, 583 So.2d 245 (Ala.1991) (holding that "time limits in the [ALSLA at § 6-5-574] are to be measured from the date of the accrual of a cause of action and not from the date of the occurrence of the act or omission," 583 So.2d at 252), I would adhere to the construction given in Michael v. Beasley, by relying on the principle of statutory construction applicable when the legislature takes a previously construed phrase and incorporates it into a new statute.
JOHNSTONE, Justice (concurring in the result, but dissenting from the rationale).
The main opinion (in its body and in its footnote 1) interprets § 6-5-574, Ala.Code 1975, to mean that a cause of action for legal malpractice accrues and the statutory limitation period starts upon the occurrence of the lawyer's wrongful act, omission, or failure, even without the accrual of one iota of damage. The main opinion reasons that "[t]his Court must construe § 6-5-574 in light of the Legislature's express intent and purpose in enacting the ALSLA." The main opinion recognizes that the intent and purpose is to remedy the "crisis" of the "increasing threat" of legal-malpractice actions.
I respectfully submit that the Legislature would not be remedying that "crisis" *874 by authorizing clients to sue their lawyers for acts, omissions, or failures which have not yet caused, and may never cause, any damage whatsoever. I know of no other theory of Alabama statutory or common law whereby a plaintiff can sue for wrongdoing without damage. Rather, the standard rules of statutory construction require an interpretation consistent with the expressly avowed purpose of the statute, albeit at odds with some ineptly drafted language in the statute. See Ex parte Birmingham Bd. of Educ., 601 So.2d 93, 96 (Ala.1992) ("the fundamental rule is to ascertain and effectuate the legislative intent as expressed in the act, which requires looking to the language used, the reason and necessity for the act, and the purpose sought to be obtained"); Ball v. Jones, 272 Ala. 305, 315-16, 132 So.2d 120, 129 (1961) ("In case of doubt or inconsistency between language in the enacting part of a statute and language in the preamble, the preamble controls because it expresses in the most satisfactory manner the reason and purpose of the act."); State ex rel. City of Mobile v. Board of Revenue & Road Comm'rs, 202 Ala. 303, 304, 80 So. 368, 369 (1918) ("The title of an act is a part of the act, made so by the provisions of section 45 of the Constitution," and "the recitals of the title are available aids to the removal of ambiguity or uncertainty in the enacting clauses of an act.").
The doctrinal damage done by the main opinion is entirely unnecessary to the resolution of the case before us. The plaintiff suffered an abundance of damage as a proximate result of the alleged acts, omissions, and failures months more than two years before the plaintiff filed his action against his original lawyer. Thus, under traditional theories of tort and limitations, the summary judgment entered by the trial court was appropriate. Cofield v. Smith, 495 So.2d 61 (Ala.1986), and Michael v. Beasley, 583 So.2d 245 (Ala.1991). Thus, while I concur in the result of the main opinion, I respectfully dissent from the new interpretation of § 6-5-574 proposed by the main opinion.
NOTES
[1] Justice Cook expresses concern that this conclusion is unnecessary to the result, nonsensical in its severing of the act or omission from the cause of action, and impossible to apply. In fact, this conclusion necessarily flows from the unambiguous language of § 6-5-574, which does not provide that the statute-of-limitations period begins to run when the client suffers actual damage, but rather when "the act or omission or failure giving rise to the claim" occurs.

By stating this conclusion, we do not intend, as Justice Cook suggests, "to sever the connection between the act or omission and the cause of action, that is, to authorize a malpractice action regardless of whether the act or omission of which the client complains ever ripens to a cause of action." 756 So.2d at 871. Justice Cook suggests that "the limitations period could, not only run, but, expire, before the plaintiff ever had a right to maintain an action." Id. at 871. In fact, under § 6-5-574, it is upon the occurrence of the tortious act or omission that the legal-malpractice cause of action accrues. It is immaterial for purposes of the statute of limitations whether the client knows the full extent of the damage resulting from the tortious act or omission. Even under Cofield, this was the rule. As the Court stated in Cofield, "[T]he [statutory limitations period] would ... have begun to run on the date the conviction was entered. This is so even though the damages for which the plaintiff now makes claim could not have been fully known at that time." 495 So.2d at 63 (emphasis added). Since the enactment of the ALSLA, the running of the statute-of-limitations period has been triggered even though the client does not know the full extent of his damage; however, that was also the case before the ALSLA was enacted. Moreover, under our interpretation today, it is not possible that the limitations period could expire before the client had a right to commence and maintain a legal-malpractice action. The occurrence of the tortious act or omission both gives rise to the client's claim and triggers the running of the limitations period. As the Supreme Court of the United States explained in Wilcox v. Executors of Plummer, 29 U.S. (4 Pet.) 172, 7 L.Ed. 821 (1830):
"The ground of action here, is a contract to act diligently and skillfully; and both the contract and the breach of it admit of a definite assignment of date. When might this action have been instituted, is the question; for from that time the statute [of limitations] must run.
"When the attorney was chargeable with negligence or unskillfulness, his contract was violated, and the action might have been sustained immediately. Perhaps, in that event, no more than nominal damages may be proved, and no more recovered; but on the other hand, it is perfectly clear, that the proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict. If so, it is clear the damage is not the cause of action."
29 U.S (4 Pet.) at 182, 7 L.Ed. at 824; accord Jankowski v. Taylor, Bishop & Lee, 246 Ga. 804, 806, 273 S.E.2d 16, 18 (1980) ("[I]t is not the special damage or injury resulting from the wrongful act which gives rise to a cause of action, but ... the fact that nominal damages may be recovered is sufficient to create a cause of action and therefore result in the statute of limitation's beginning to run.").
We recognize that the occurrence rule may be more difficult to apply in practice, because in the absence of any concurrent or resulting actual damage the client may not know that the attorney has violated the applicable standard of care. However, it is not for this Court to act as a superlegislature and second-guess the wisdom or folly, advantages or disadvantages of legislation.
[2] See Ex parte Sims, 627 So.2d 380 (Ala.1993) (Section 34-3-21 governs settlements before appeal, and Ala. R.App. P. 47 governs settlements during the appellate period).
[3] Significantly, the first proviso of § 6-5-574(a) expressly states that "if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery." (Emphasis added.) Without controversy, "the cause of action" mentioned in the first proviso refers directly back to "the act or omission or failure giving rise to the claim" in the preceding clause of that section. Thus, it is clear and certain that the Legislature intended to tie the statute of limitations, as Michael held, to the accrual of the plaintiff's cause of action.
[4] The opinion will directly affect the future analysis of claims alleging medical malpractice, pursuant to Ala.Code 1975, § 6-5-482(a). This is so, because the Alabama Legal Services Liability Act "is clearly modeled after the [Alabama Medical Liability Act]," and the operative language of § 6-5-574(a) in the ALSLA is similar to that of § 6-5-482(a) in the Alabama Medical Liability Act. Michael, 583 So.2d at 250.