810 So.2d 652 (2001)
James Scott WESSON
v.
McCLEAVE, ROBERTS, SHIELDS & GREEN, P.C., et al.
1991210.
Supreme Court of Alabama.
July 13, 2001.
*653 Stephen D. Heninger and R. Edwin Lamberth of Heninger, Burge, Vargo & Davis, L.L.P., Birmingham, for appellant.
Bradley R. Byrne of Adams & Reese, L.L.P., Mobile, for appellees.

On Rehearing Ex Mero Motu
STUART, Justice.
The opinion of June 15, 2001, is withdrawn, and the following is substituted therefor.
This is a legal-malpractice case. James Scott Wesson appeals from a judgment of the Mobile County Circuit Court entered on February 4, 2000, dismissing Wesson's complaint against Daniel L. McCleave and his law firm, McCleave, Roberts, Shields & Green, P.C. (the two defendants are referred to hereinafter as "McCleave" and "the firm"). The dismissal was based upon the trial court's holding that the applicable statute of limitations barred Wesson's lawsuit.

Facts
On August 23, 1999, Wesson sued McCleave and his law firm, alleging that McCleave and the firm had breached a contract of legal representation with him and that they had acted negligently or wantonly by failing to file a lawsuit on his behalf within the period permitted by the prescribed statute of limitations. Specifically, *654 Wesson alleged that the defendants had failed to file for him an action stating an age-discrimination claim under the Age Discrimination Act of 1967, within 90 days after he had received a "right-to-sue" letter from the Equal Employment Opportunity Commission ("EEOC"). See 29 U.S.C. § 626(e).
Wesson's age-discrimination claim arose out of his termination by the Huntsman Corporation ("Huntsman"). He was 55 years old when Huntsman terminated his employment, and he had worked for Huntsman and its predecessor, Shell Oil Company, for 33 years. On February 22, 1996, Wesson contacted the firm and McCleave. On February 26, 1996, he entered into an hourly based contract for legal representation and advice regarding his termination. The purpose of this contract was for McCleave to negotiate with Huntsman an acceptable severance agreement for Wesson. This effort was unsuccessful, and on April 30, 1996, Wesson entered into a contingency-fee contract with the firm and McCleave for legal representation, specifically for them to file a claim of age discrimination against Huntsman.
On June 12, 1996, the firm and McCleave sent Wesson a draft of his agediscrimination charge for him to execute and submit to the EEOC. In September 1996, McCleave wrote the EEOC a letter in which he requested that it issue a right-to-sue letter, because, he said in the letter, he desired to pursue the age-discrimination claim in a federal court. On December 23, 1996, the EEOC responded to McCleave's September 1996 letter by sending him a letter stating that because he intended to file a lawsuit in the federal court, the EEOC would take no further action on the charge filed with the EEOC. Although McCleave has stated that he did not understand that this EEOC letter was a right-to-sue letter, because it did not state it was a "notice of right to sue" or state that Wesson had 90 days in which to file a lawsuit, the evidence indicates otherwise.
Four days later, on December 27, 1996, McCleave sent the following letter to Mr. Wesson:
"Dear Scott:
"I have received the enclosed response from the E.E.O.C. We may now proceed to file suit in federal district court. I will begin drafting the complaint with an eye toward filing by the end of January.
"If you have any questions or comments, please don't hesitate to contact me. I remain
 "Sincerely,
 "/s/Daniel L. McCleave"
In August 1997, Wesson began to inquire about the progress of his age-discrimination claim. Wesson set up several meetings with McCleave to discuss his claim, but these meetings were canceled. On September 17, 1997, Wesson finally met with the firm and McCleave. Wesson was given a letter explaining that no lawsuit had been filed within the prescribed limitations period and that if one were filed it would most likely be dismissed as untimely. In this letter, the firm and McCleave admitted that "[t]he law appears to be well settled that the letter received from the EEOC was a sufficient notice of right to sue, and that we were required to file a lawsuit under the ADEA within 90 days after the date we received that letter from the EEOC." In the letter, the firm and McCleave withdrew from their representation of Wesson. The letter further advised: "If you wish to consult with an attorney about the consequences of my failure to file a timely lawsuit under the ADEA, or your rights as a result of that *655 failure, you need to consult with another attorney of your own choosing promptly."
Wesson promptly contacted another attorney for the purpose of filing an action based on his age-discrimination claim. On November 4, 1997, that attorney filed, in a federal court, an action against Huntsman stating an age-discrimination claim, as well as a breach-of-contract claim. Huntsman moved for a partial summary judgment on the age-discrimination claim, arguing that it was barred by the statute of limitations. Wesson's new attorney opposed the motion on the grounds that the principle of equitable tolling prevented application of the statute of limitations. He argued that McCleave had committed malpractice and that because of the malpractice the principles of equitable tolling excused the failure to timely file the claim. The federal court rejected that argument and granted Huntsman a partial summary judgment on April 28, 1998. On January 14, 1999, Huntsman moved for a summary judgment on Wesson's breach-of-contract claim. The federal court granted Huntsman's motion. The federal district court entered a final judgment on both Wesson's age-discrimination claim and his breach-of-contract claim on March 17, 1999. On April 15, 1999, Wesson appealed, as to both claims, to the United States Court of Appeals for the Eleventh Circuit. That court affirmed the district court's judgment on March 17, 2000while the appeal in the present case was already pending before this Court. Wesson v. Huntsman, 206 F.3d 1150 (11th Cir.2000).
In the meantime, Wesson contacted other attorneys for the purpose of filing a legal-malpractice action against the firm and McCleave. That action was filed in the Mobile Circuit Court on August 23, 1999, five months after the federal district court's summary judgment on Wesson's age-discrimination claim had become final and during the pendency of Wesson's appeal to the Eleventh Circuit.
On September 24, 1999, the firm and McCleave moved to stay the proceedings on Wesson's malpractice claim, on the basis that if the Eleventh Circuit reversed the judgment on Wesson's age-discrimination claim, then Wesson would have suffered no damage and thus would have no valid legal-malpractice claim. The Mobile Circuit Court granted the motion and stayed the proceedings.
On November 22, 1999, the firm and McCleave moved to dismiss Wesson's legal-malpractice action, on the ground that it had not been filed within the limitations period prescribed by § 6-5-574(a), Ala. Code 1975, and they moved the court to lift the stay so that it could consider their motion to dismiss. The firm and McCleave's motion to dismiss was based on their argument that Wesson's legal-malpractice claim had accrued on the date the period allowed by the statute of limitations for filing his age-discrimination claim had run; that more than two years had elapsed since that date; and, thus, that his legal-malpractice claim was barred. The circuit court, accepting this argument, lifted the stay and entered an order granting the motion to dismiss, on February 4, 2000.
On March 13, 2000, Wesson appealed to this Court from the order on the motion to dismiss. On March 17, 2000, the Eleventh Circuit Court of Appeals affirmed the federal district court's dismissal of Wesson's age-discrimination claim. Wesson v. Huntsman, 206 F.3d 1150 (11th Cir.2000).

Analysis
The trial court granted a motion the defendants had styled as a "motion to dismiss." However, this Court has written:

*656 "When matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment, Rule 12(b), Ala. R.Civ.P.; this is the case regardless of what the motion has been called or how it was treated by the trial court, Papastefan v. B & L Constr. Co., 356 So.2d 158 (Ala.1978); Thorne v. Odom, 349 So.2d 1126 (Ala.1977)."
Hornsby v. Sessions, 703 So.2d 932, 937-38 (Ala.1997). Because in ruling on the motion the trial court considered the exhibits Wesson had attached to his response to the motion to dismiss, this Court will consider this appeal as an appeal from a summary judgment.
"In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala.1995); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is `substantial' if it is of `such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).
This appeal presents one issue: When did Wesson's legal-malpractice cause of action against McCleave and the firm accrue? Wesson contends that the cause of action did not accrue and, thus, that the limitations period prescribed by § 6-5-574(a), Ala.Code 1975, did not begin to run, until, at the earliest, the date the federal district court entered its final judgment against Wesson's age-discrimination claim (that would be March 17, 1999), or, arguably, not until the Court of Appeals for the Eleventh Circuit affirmed the district court's judgment (that would be March 17, 2000). Wesson argues that, at least until the federal district court entered its final judgment against his age-discrimination claim, he had suffered no damage as a result of the legal malpractice and, therefore, had no legal-malpractice claim.
McCleave and the firm argue that the cause of action accrued on the date the statute of limitations barred the age-discrimination claim, i.e., on March 23, 1997. They assert that Wesson had until March 23, 1999, to file his malpractice action and, because he did not file it until August 1999, his claim is barred.
Section 6-5-574(a) sets out the applicable time limitations for filing legal-service-liability actions:
"(a) All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the *657 action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided, further, that in no event may the action be commenced more than four years after such act or omission or failure; except, that an act or omission or failure giving rise to a claim which occurred before August 1, 1987, shall not in any event be barred until the expiration of one year from such date."
This Court in Lomax v. Gibson, 584 So.2d 445, 446 (Ala.1991), held that the client's cause of action accrued "when the statutory period of limitations in his workmen's compensation suit expired." Lomax involved an attorney who agreed to file a workers' compensation action for his client. The attorney filed the complaint, but failed to pay the required docket fee; payment of that fee was a jurisdictional prerequisite for maintaining the action. Therefore, it was as if the attorney had never filed the action at all. The client did not learn of the failure to pay the appropriate fee until more than two years after the statutory limitations period for filing his workers' compensation claim had run. The trial court dismissed the malpractice action as barred by the statute of limitations, and this Court affirmed. McCleave and the firm assert that Lomax is controlling.
Shortly after Lomax was decided, this Court ruled, in Michael v. Beasley, 583 So.2d 245 (Ala.1991), that a legal-malpractice action does not accrue until the client suffers a legal injury. Wesson argues that he suffered no legal injury until the federal district court entered its final judgment against his age-discrimination claim or, perhaps, until that judgment was affirmed by the Eleventh Circuit.
This Court has dealt with the legal-malpractice statute-of-limitations issue on a number of other occasions. In Mississippi Valley Title Insurance Co. v. Hooper, 707 So.2d 209 (Ala.1997), the client argued that the limitations period began to run when the client was forced to settle lawsuits based upon faulty insurance policies that had been issued in reliance upon allegedly inaccurate title opinions. This Court disagreed, stating that the cause of action accrued, and that the limitations period began to run, when the policies were issued, not when actions attacking their validity were filed and settled.
In Ex parte Panell, 756 So.2d 862 (Ala. 1999), this Court undertook to resolve the apparent contradictions in the Lomax and Michael cases. Wesson argues that Panell is not controlling because it was a plurality decision and was specifically held to be prospective only.
In Panell, the attorney settled a lawsuit for his client without the client's consent, and the client's lawsuit was later dismissed as a result of the settlement. The settlement was made on September 22, 1993; the trial court noted the settlement on its docket sheet on January 31, 1994; and the case was dismissed on August 18, 1994. The client filed a malpractice action against the attorney on January 30, 1996, within two years of the court's notation on the docket sheet and the dismissal, but more than two years after the attorney had entered the settlement. The trial court dismissed the client's malpractice action as barred by the statute of limitations. The Court of Civil Appeals affirmed the judgment of dismissal, without an opinion, Panell v. Henslee, 723 So.2d 117 (Ala.Civ. App.1997) (table); on certiorari review, this Court reversed the judgment of the Court of Civil Appeals, holding:
"Panell's legal-malpractice cause of action accrued, and, thus, the statute-of-limitations period began to run, on September 23, 1993, the day after Henslee *658 allegedly accepted a settlement offer without Panell's approval.... Thus, on September 23, 1993, Panell `sustained a legal injury sufficient for [him] to maintain an action against [Henslee].'"
Ex parte Panell, 756 So.2d 862, 869 (Ala. 1999).
This Court, in its more recent decision in Sirote & Permutt, P.C. v. Bennett, 776 So.2d 40 (Ala.2000), again approved an application of the "occurrence" theory for determining when the limitations period on a legal-malpractice claim begins to run. In Sirote & Permutt, the attorney issued a legal opinion indicating that Central Alabama Community College did not need the approval of the Alabama Commission on Higher Education ("ACHE") to offer courses at a new site that was being constructed with investor financing through vehicles known as "certificates of participation." The site was owned by a third party, which in turn leased it to the College. ACHE subsequently disapproved the program offering at the new site. In a declaratory-judgment action, the trial court ruled that ACHE's approval was required. The College quit paying rent for the site, and the stream of revenue to pay back the investors stopped. The investors sued several parties, including the attorney.
The attorney argued that the investors' legal-malpractice claim was barred by the statute of limitations. As in the present case, the issue was when the claim had accrued. The investors argued that the limitations period did not begin to run until the trial court ruled in the declaratory-judgment action that ACHE approval was required. This Court held to the contrary:
"The plaintiffs' position rests on the assumption that the accuracy of Sirote & Permutt's legal opinion depended on the outcome of the ACHE case. Under this reasoning, the plaintiffs would have had no cause of action if there had been no ACHE case. Clearly that is not true.
"We agree with Sirote & Permutt and Simpler that the plaintiffs' causes of action accrued on the date they purchased their certificates, because it was on that date that the plaintiffs first suffered legal damage for which they would have been entitled to bring an action for damages against Sirote & Permutt and Simpler. Our decision is based on the caselaw applying the Michael rule that the period of limitations begins to run as soon as the plaintiff sustains a legal injury."
Sirote & Permutt, 776 So.2d 40 at 45.
The present case is similar to Sirote & Permutt, in that Wesson argues that whether he had sustained a legal injury depended on the outcome of his age-discrimination lawsuit. Like the argument in Sirote & Permutt, this argument is incorrect, because to accept Wesson's argument would mean that if no lawsuit was ever filed there would be no injury. There was a legal injury to Wesson on the date the statute of limitations barred his age-discrimination claim. That was the date the right to sue McCleave and the firm for legal malpractice accrued.
In this case, the saving clause of the Alabama Legal Liability Act does not come into play. Although Wesson may not have known on March 23, 1997, that after that date his age-discrimination claim would be barred by the statute of limitations, he certainly knew on September 17, 1997, that the limitations period had expired, because on that date, well within the two-year limitations period, McCleave and the firm gave him the letter stating:
"The law appears to be well settled that the letter received from the EEOC was a sufficient notice of right to sue, *659 and that we were required to file a lawsuit under the ADEA within 90 days after the date we received that letter from the EEOC. I did not do so. Consequently, if we now file a lawsuit against your former employer asserting an age discrimination claim under the ADEA, the Court almost certainly will dismiss the age discrimination claim because the lawsuit was not filed in a timely manner. The result would be that you would lose the opportunity to pursue your age discrimination claim....
"If you wish to consult with an attorney about the consequences of my failure to file a timely lawsuit under the ADEA, or your rights as a result of that failure, you need to consult with another attorney of you own choosing promptly."
There is no validity to Wesson's argument that he did not have a cause of action until the federal district court entered a judgment against his age-discrimination claim or until that judgment was affirmed on appeal.
Wesson argues that public policy should require a reversal in this case because, he says, an affirmance would discourage clients from attempting to mitigate the effects of legal malpractice. This is not correct. As a general rule, aggrieved parties are required to make reasonable efforts to reduce or mitigate their damage. Christiansen v. Hall, 567 So.2d 1338, 1340 (Ala.1990). The legal-malpractice statute of limitations does not eviscerate this rule.
The Alabama Legislature declared the public policy of this State when it adopted the Alabama Legal Liability Act. In that Act, the Legislature made a finding that "the threat of legal actions against legal service providers contributes to an increase in the cost of legal services and places a heavy burden upon those who can least afford such cost," thus causing a "decreasing availability of essential legal services" and creating "a danger to the welfare of the citizens of this state." Ala. Code 1975, § 6-5-570. To require a person in Wesson's situation to file a lawsuit and pursue it to a judgment in order to have a legal-malpractice cause of action would violate this public policy of quickly resolving legal-malpractice claims. To allow a party to pursue a lawsuit that would have the effect of extending the time allowed by statute for filing an action, or the effect of reviving an action already barred, would likewise violate the public policy expressed by the Legislature.
The trial court correctly held that Wesson's legal-malpractice cause of action accrued on March 23, 1997, and that the limitations period expired on March 23, 1999, or that Wesson discovered or learned of the attorney's omission on September 17, 1997, and that, under the saving clause, the limitations period expired six months thereafter, on March 17, 1998. In either case, Wesson's legal-malpractice claim was barred by the statute of limitations. We affirm the summary judgment in favor of McCleave and the firm.
ON REHEARING EX MERO MOTU: OPINION OF JUNE 15, 2001, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
MOORE, C.J., and HOUSTON, SEE, BROWN, JOHNSTONE, and HARWOOD, JJ., concur.
LYONS and WOODALL, JJ., concur in the result.
LYONS, Justice (concurring in the result).
The statute of limitations on Wesson's age-discrimination claim ran on March 23, 1997. Wesson commenced an action in a *660 federal district court on November 4, 1997, in which he unsuccessfully attempted to avoid the bar of limitations by asserting an estoppel theory. That litigation was finally concluded adversely to Wesson on March 17, 1999.
After the federal district court entered its judgment against Wesson's age-discrimination case, but during the pendency of an appeal to the United States Court of Appeals for the Eleventh Circuit, Wesson commenced, on August 23, 1999, in the Mobile Circuit Court, an action stating a legal-malpractice claim. The firm and McCleave, defendants in the legal-malpractice action, upon a motion filed on September 24, 1999, successfully obtained a stay of the state-court action pending a ruling on the appeal to the Eleventh Circuit, on the ground that a result in that appeal favorable to Wesson would lead to the conclusion that Wesson had not yet suffered damage as a result of the alleged malpractice. Thereafter, on November 22, 1999, the firm and McCleave moved to dismiss the state-court action on the ground of the statute of limitations and sought a dissolution of the stay for purposes of considering the motion. The trial court lifted the stay and dismissed the action.
Wesson asks us to hold that his cause of action did not accrue until either of two datesfirst, the date of the adverse final judgment in the federal district court or, second, the later ruling in the Eleventh Circuit. Of course, if we adopted the latter of those two dates, then we would have to conclude that Wesson's legal-malpractice cause of action had not yet accrued when he commenced his legal-malpractice action. Wesson argues that this case is governed by Cantrell v. Stewart, 628 So.2d 543 (Ala.1993), where this Court rejected the argument that a legal-malpractice cause of action arising from an attorney's failure to file an action within the applicable period of limitations accrued upon the expiration of the period of limitations. Instead, this Court held that the cause of action accrued upon the dismissal of the untimely action.
The significant distinction between Wesson's case and Cantrell is that, in Cantrell, the defense first became an issue in the defendant's answer in the untimely litigation. This Court reasoned in Cantrell:
"We note that Pearce v. Schrimsher, 583 So.2d 253 (Ala.1991); Leighton Avenue Office Plaza, Ltd. v. Campbell, 584 So.2d 1340 (Ala.1991); Corte v. Massey, 582 So.2d 1108 (Ala.1991); Lomax v. Gibson, 584 So.2d 445 (Ala.1991); and Cofield v. Smith, 495 So.2d 61 (Ala. 1986), are distinguishable. Unlike Michael v. Beasley, [583 So.2d 245 (Ala. 1991),] Brewer v. Davis, [593 So.2d 67 (Ala.1991),] and the present case, none of those cases involved a claim against an attorney based upon an act or omission that occurred during ongoing litigation, the effect of which was incapable of determination during that litigation until a finding was made by a jury or a ruling was made by a trial or appellate court. In Michael v. Beasley, the plaintiffs alleged that their attorney had negligently handled their case; however, the question of the effectiveness of the attorney's representation and, thus, the question of the [plaintiffs'] damages, remained unanswered until the jury returned a verdict against them. Likewise, in Brewer v. Davis, the plaintiffs sustained no actual loss or injury until this Court reversed the trial court's judgment in their favor and overruled their application for rehearing. The present case is like Beasley and Brewer, in that the legal effect of the motions to dismiss filed by Quality Inns and the Reagans was unknown until the trial court ruled on them (i.e., *661 those motions were the subject of a justiciable controversy and Cantrell could not have suffered any injury for which he could have maintained an action until he actually received an adverse ruling)."
Cantrell, 628 So.2d at 546 n. 2.
Wesson's problem with the statute of limitations and his awareness of that problem predated the commencement of this legal-malpractice action. Unlike the situation in Cantrell, when Wesson's statute-of-limitations problem arose and he became aware of it, no justiciable controversy as to the merit of the limitations defense was then pending. Indeed, McCleave conceded the strength of the defense of limitations in a letter to Wesson on September 17, 1997. The letter stated, "Consequently, if we now file a lawsuit against your former employer asserting an age discrimination claim under the ADEA, the Court almost certainly will dismiss the age discrimination claim because the lawsuit was not filed in a timely manner." McCleave then advised Wesson that if he wished to consult another attorney about McCleave's failure to file a timely lawsuit, he should do so promptly. Thereafter, Wesson retained new counsel, who elected to commence an action in a federal court at a time when the legal-malpractice claim would not have been time-barred. That the age-discrimination claim was time-barred on its face does not appear open to serious question. Wesson sought to avoid his employer's defense by invoking the theory of estoppel, based on the conduct of Wesson's earlier attorney who, of course, in allowing the limitations period to expire, had not been acting on behalf of Wesson's employer.
Under these circumstances, Cantrell is distinguishable. Wesson's legal injury was clear before he commenced the federal action in which his opposition to the defense of limitations was rejected. If the rule were otherwise, then a client whose attorney failed to timely file the client's lawsuit would not incur an injury until another attorney had filed for the client a new action to assert a facially groundless claiman action one might suppose had been filed in an attempt to protect the former attorney from malpractice. Wesson does not ask us to hold that the law firm and McCleave waived, or are otherwise estopped to assert, the defense of limitations, by their arguing to the trial court, in support of their motion to stay and before asserting the defense of limitations, that Wesson's claim was premature.
The trial court properly granted the defendants' motion, styled as a motion to dismiss, on the ground that Wesson's legal-malpractice claim was barred by the statute of limitations.