In this legal-malpractice case approximately 70 plaintiffs allege that attorney M. Fredrick Simpler, Jr., and the law firm of Sirote Permutt, P.C., were negligent in issuing a legal opinion in connection with a financing transaction. Simpler and Sirote 
Permutt moved the trial court for a summary judgment, arguing that the action was time-barred. The trial court denied that motion. We granted Simpler and Sirote Permutt's petition for permission to appeal from the trial court's order denying their motion for a summary judgment. See Rule 5, Ala.R.App.P. The sole question on appeal is when the plaintiffs' causes of action accrued.[1]
Because we conclude that the trial court erred in determining when the plaintiffs' causes of action accrued, we reverse the trial court's order denying the defendants' motion for a summary judgment and remand the case with instructions.
 I.
In 1979, the Alabama Commission on Higher Education ("ACHE") approved a course of study to be offered by Central Alabama Community College ("CACC") at the Draper-Staton Corrections Facility Complex, near Millbrook. From 1979 forward, CACC offered this course of study to inmates as well as to "free-world" students outside the prison population. In 1991, to attract more "free-world" students, CACC sought to relocate some of the Draper-Staton course offerings to a new building to be constructed six miles away in Millbrook. CACC hired the firm of Blount, Parrish Roton, Inc., as the underwriter for a "certificate-of-participation" issue to finance the construction of the new building. A "certificate-of-participation" issue is similar to a bond issue, but, rather than purchasing bonds, investors purchase "participation units" that entitle them to receive a pro rata share of rent payments. Simpler, an attorney with the firm of Sirote Permutt, acted as counsel for the transaction.
In November 1991, the Alabama Board of Education (the "Board") authorized Millbrook Leasing, Inc., to acquire property in Millbrook and to build the classroom facility proposed to be used by CACC. The Board also authorized CACC to lease the property and building and, on January 1, 1992, CACC entered into a lease agreement with Millbrook Leasing. The lease was for a one-year term, with CACC having an option to renew the lease on a year-by-year basis for 20 years and the right to terminate the lease and refuse to renew it at the end of any one-year lease period. In the lease agreement, CACC represented and warranted that it had "obtained or will obtain the consent or approval of all . . . governmental entities who are required by law to approve a transaction of the type contemplated by this lease agreement." The agreement further provided that if "such approval is rescinded, denied, or otherwise made unavailable, this lease agreement shall be null and void and of no effect."
On January 29, 1992, the financing transaction was closed and the certificates of participation were issued. On that date, Blount, Parrish Roton, the underwriter, purchased the certificates at 97% of their face value. Over the next few months, Blount, Parrish Roton, as well as brokers at Compass Bank, N.A., and Paine Webber, Inc. (a securities dealer), sold the certificates to investors. All certificates were sold by March 20. The certificates *Page 42 
and related documents provided that Millbrook Leasing assigned its right to receive CACC's rent payments to First Alabama Bank as trustee for the benefit of the certificate holders, and that First Alabama Bank would pay each certificate holder his or her pro rata share of the rental revenue. First Alabama Bank later changed its name to Regions Bank.
In connection with the closing, Sirote Permutt issued an opinion letter regarding the validity and tax status of the financing transaction. The opinion letter, which is the basis of the plaintiffs' legal-malpractice claims, states that, in the firm's opinion, the lease agreement was "duly authorized" and was a "valid and binding agreement of [CACC] enforceable in accordance with its terms." The opinion was based, in part, on Simpler's conclusion that CACC did not need approval from ACHE to offer courses at the Millbrook campus, because CACC was simply relocating an already-approved course of study from the Draper-Staton facility to the Millbrook campus.
Also in January 1992, officials at Alabama State University ("ASU"); Auburn University at Montgomery; and Troy State University at Montgomery informally advised ACHE officials that they had some concerns about, and objections to, the proposed new CACC campus in Millbrook. ASU's concerns related, in part, to the possible adverse impact of the new CACC campus on ASU's ability to comply with a 1991 order from a federal district court order directing ASU to "develop and implement a plan to recruit white students." See Knight v. Alabama, 787 F. Supp. 1030, 1380
(N.D.Ala. 1991), aff'd in part, vacated in part, and rev'd in part,14 F.3d 1534 (11th Cir. 1994). Other concerns, shared by all three institutions, related to duplication of course offerings in the Montgomery area.
Construction of the classroom facility began in May 1992 and was completed in February 1993. CACC renewed the lease through September 30, 1993.
In August 1992, Dr. Fred Gainous, chancellor and chief executive officer of the Alabama Department of Post Secondary Education, requested ACHE approval of CACC's proposal to offer courses at the Millbrook campus. Dr. Gainous stated that the proposal was "nothing more than a relocation of existing programs, services and activities" that ACHE had approved in 1979. The request was resubmitted in October, after apparently having been withdrawn. ACHE staff opposed the proposal, taking the position that ACHE had never authorized CACC to offer courses to "free-world" students at the Draper-Staton facility and that, therefore, CACC proposed to do more than relocate already-approved programs. At its October 23, 1992, meeting, ACHE denied CACC's proposal.
In March 1993, Millbrook Leasing and the president of CACC sued ACHE (that lawsuit will be called the "ACHE case"), seeking, among other things, a declaration that CACC did not need ACHE approval to offer courses at the Millbrook campus. Millbrook Leasing and CACC argued that CACC was simply relocating already-approved course offerings from the Draper-Staton facility to the Millbrook campus, and that, therefore, ACHE approval was not required. See Ala. Code 1975, § 16-5-8(c).[2] On December 30, 1993, the trial *Page 43 
court entered a final judgment in favor of ACHE, holding that, because "in 1979 ACHE approved a program of instruction for prison students, not free-world students," CACC's proposal was for a new program of instruction and was subject to ACHE approval. See id.
Pursuant to the terms of the lease, CACC terminated the lease effective September 30, 1993. CACC had paid rent from September 1992 through February 1993.
In October 1993, Regions Bank, as trustee, notified the certificate holders that CACC had stopped paying rent, that the building was not occupied, and that Regions Bank had withdrawn money from the debt-service reserve fund in order to make the scheduled October 1993 payment to certificate holders. Regions Bank also informed the certificate holders that "[t]he judge [was] expected to render a decision soon" in the ACHE case. In March 1994, Regions Bank notified the certificate holders that it had withdrawn more money from the debt-service reserve fund in order to make the scheduled April 1994 payment to certificate holders, that CACC was still not paying rent, that the building was still unoccupied, and that Regions Bank did not have enough money to make the payment scheduled for October 1994. At that time, Regions Bank also informed the certificate holders that the court had ruled in the ACHE case that CACC did not have the right to offer courses at the Millbrook campus. In August 1994, Regions Bank notified the certificate holders that the Millbrook campus remained unoccupied, that the building was no longer insured, and that Regions Bank had elected not to take possession of the building. Regions Bank made a partial payment to certificate holders in October 1994, but, because no additional funds were available, it made no further payments.
By August 1995, some of the certificate holders had hired attorneys to consider suing the entities that eventually became the defendants in this action. On August 16, Sirote Permutt; Blount, Parrish Roton; Millbrook Leasing; First Alabama; and Edward W. Mudd, one of the certificate holders, in his individual capacity and as chairman of a committee of certificate holders, entered into an agreement, the purpose of which was to facilitate an out-of-court resolution of the certificate holders' claims. Among other things, the agreement provided that, in exchange for Mudd's covenant not to sue for a certain period of time, Sirote 
Permutt agreed to a tolling of the statutory limitations period *Page 44 
for a period of time beginning on July 27, 1995.[3]
On January 16, 1996, 53 certificate holders filed this action against Blount, Parrish Roton; Simpler; Sirote Permutt; Millbrook Leasing; Paine Webber; and Compass Bank. Regions Bank was later added as a party defendant. An additional 25 plaintiffs joined the action by amendment. The trial court dismissed Regions Bank and Millbrook Leasing. All other defendants, except Sirote 
Permutt and Simpler, have settled with the plaintiffs. The plaintiffs claim, among other things, that Sirote Permutt and Simpler committed legal malpractice in issuing the opinion letter stating that the lease between CACC and Millbrook Leasing was "duly authorized" and was a "valid and binding agreement of [CACC] enforceable in accordance with its terms." (The plaintiffs also asserted fraudulent-misrepresentation and fraudulent-suppression claims against Sirote Permutt and Simpler. The trial court entered a summary judgment in favor of Sirote Permutt and Simpler as to those claims. The plaintiffs have not sought appellate review, as part of this permissive appeal, of the summary judgment in favor of Sirote Permutt and Simpler as to the fraud claims.) Sirote Permutt and Simpler moved the trial court for a summary judgment, arguing that the plaintiffs' claims were time-barred. The trial court denied that motion as to the legal-malpractice claims.
 II.
The trial court concluded that the plaintiffs' claims had accrued on December 30, 1993, when the court ruled in the ACHE case. All parties asked the trial court to allow Sirote Permutt and Simpler to petition this Court for permission to appeal from the trial court's order denying their summary-judgment motion, for this Court to resolve "the limited issue of when the cause of action accrued."[4]
 III.
Actions against legal service providers are governed by the Alabama Legal Services Liability Act ("ALSLA"), which provides the applicable statute of limitations:
 "All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided, further, that in no event may the action be commenced more than four years after such act or omission or failure. . . ."
Ala. Code 1975, § 6-5-574(a). In Michael v. Beasley,583 So.2d 245 (Ala. 1991), this Court held that "the time limits in the [ALSLA] are to be measured from the *Page 45 
date of the accrual of a cause of action and not from the date of the occurrence of the act or omission." 583 So.2d at 252.[5]
Sirote Permutt and Simpler argue that the plaintiffs' causes of action accrued when the plaintiffs purchased the certificates of participation. They argue that if Sirote 
Permutt's opinion letter incorrectly stated that CACC had obtained all necessary approvals and that the lease between CACC and Millbrook Leasing was valid, then the plaintiffs were damaged as soon as they bought the certificates because in that case the certificates would have been worth less than they would have been if the opinion had been correct.
The plaintiffs argue, and the trial court held, that their causes of action accrued on December 30, 1993, the date of the judgment in the ACHE case. They argue that they suffered no legal damage before that date, because, they say, if the ACHE case had been decided in favor of CACC, then there would have been a judicial determination that Sirote Permutt's legal opinion was correct and the certificate holders would not have suffered any damage.
The plaintiffs' position rests on the assumption that the accuracy of Sirote Permutt's legal opinion depended on the outcome of the ACHE case. Under this reasoning, the plaintiffs would have had no cause of action if there had been no ACHE case. Clearly, that is not true.
We agree with Sirote Permutt and Simpler that the plaintiffs' causes of action accrued on the date they purchased their certificates, because it was on that date that the plaintiffs first suffered legal damage for which they would have been entitled to bring an action for damages against Sirote 
Permutt and Simpler. Our decision is based on the caselaw applying the Michael rule that the period of limitations begins to run as soon as the plaintiff sustains a legal injury. See 583 So.2d at 251.
In Michael, this Court quoted and relied on Cofield v. Smith,495 So.2d 61 (Ala. 1986), in which this Court held that the plaintiff's legal-malpractice action accrued on the date he pleaded guilty to a crime, allegedly on the advice of his attorney. See 583 So.2d at 253 (quoting Cofield, 495 So.2d at 62-63). In Cofield, this Court stated that "[a]lthough the plaintiff's damages may have been compounded subsequently by virtue of the effect which the . . . conviction had on the punishment enhancement provisions of Alabama's Habitual Felony Offender Act, the [period of limitations] would, nonetheless, have begun to run on the date the conviction was entered." 495 So.2d at 62-63. Similarly, in the present case, even though the plaintiffs' losses "may have been compounded subsequently by virtue of the effect" of the judgment in the ACHE case, the plaintiffs' causes of action accrued when each plaintiff first sustained appreciable legal damage. Michael, 583 So.2d at 251;Cofield, 495 So.2d at 63.
In Ladner v. Inge, 603 So.2d 1012 (Ala. 1992), this Court considered legal malpractice in connection with a real estate transaction. The plaintiff had transferred her interest in inherited property to her two brothers, in exchange for promissory notes. More than four years after the transactions, and after the brothers had defaulted on the notes, the plaintiff sued her attorney, alleging that he had committed malpractice by failing to advise her to obtain mortgages on the property to secure payment of the notes. 603 So.2d at 1013. Applying the ALSLA as it was construed in Michael, this Court held that the action was time-barred, reasoning that the plaintiff "sustained the alleged injury or damage . . . when she accepted the unsecured promissory notes and delivered the *Page 46 
warranty deeds," because "unsecured promissory notes . . . are less valuable than promissory notes secured by mortgages," and "[i]n addition to having no security interest and having her claims vulnerable to the priority enjoyed by holders of other claims, [the plaintiff] could not sell or assign the unsecured promissory notes in the same manner as she could have sold or assigned a note secured by a mortgage; nor could she have transferred it for a comparable value." 603 So.2d at 1015. Accord Malb's Assocs., Inc. v. Phillips,589 So.2d 164, 165 (Ala. 1991) (holding that the clients' legal-malpractice cause of action accrued when their attorneys were alleged to have acted negligently in preparing legal documents related to the clients' proposal to franchise a restaurant business).
The plaintiffs in this case are in a position similar to that of the plaintiff in Ladner — if Sirote Permutt's legal opinion was incorrect, and the lease between CACC and Millbrook Leasing was invalid, then the certificates were less valuable than certificates of participation in rents under a valid lease. Although, at the time of purchase, the plaintiffs may not have known that the certificates were less valuable, if the plaintiffs' allegations are true, they were.
In Pearce v. Schrimsher, 583 So.2d 253 (Ala. 1991), andMississippi Valley Title Insurance Co. v. Hooper, 707 So.2d 209
(Ala. 1997), this Court considered the question when legal-malpractice causes of action would have accrued in regard to legal malpractice in connection with allegedly faulty legal opinions. In Pearce, the plaintiffs alleged that "they had incurred damages by closing a real estate transaction in reliance on an erroneous title opinion that had been provided to them." 583 So.2d at 253. This Court held that the plaintiffs' cause of action accrued when the transaction was closed, even though at the time the plaintiffs purchased the property they did not know the title opinion was incorrect. Id. at 254. Similarly, in MississippiValley Title Insurance Co., this Court held that a title-insurance company's cause of action against an attorney arising out of the attorney's alleged malpractice in preparing title opinions accrued when the attorney, acting as agent of the insurance company, issued title-insurance policies in reliance on the allegedly faulty title opinions. In so holding, this Court rejected the insurance company's argument that the cause of action accrued when it paid claims made under the policies. 707 So.2d at 213.
Like the plaintiffs in Pearce and Mississippi Valley TitleInsurance Co., the plaintiffs in this case allege that they sustained damage because of a faulty legal opinion. Like the causes of action in those cases, these plaintiffs' causes of action accrued at the time of the transactions, that is, when they purchased their certificates.
 IV.
Because the trial court incorrectly determined that the plaintiffs' causes of action accrued on December 30, 1993, we reverse the order denying Sirote Permutt and Simpler's summary-judgment motion and remand the case for further proceedings consistent with this opinion. On remand, the trial court should consider the plaintiffs' other arguments, specifically, that Sirote Permutt and Simpler waived the defense of the statute of limitations by failing to assert that affirmative defense as required under Rule 8(c), Ala.R.Civ.P., and that the statute of limitations is not a defense because the running of the limitations period under § 6-5-574 was tolled by § 6-2-3 or by agreement between the parties.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Hooper, C.J., and Maddox, Houston, Cook, and England, JJ., concur.
Lyons, Brown, and Johnstone, JJ., concur in the result.
[1] For purposes of this appeal, we do not address the merit of the plaintiffs' claims against Simpler and Sirote 
Permutt.
[2] Ala. Code 1975, § 16-5-8(c), provides:
 "The governing boards of public institutions of higher education in this state and the campuses under their governance or supervision shall not undertake the establishment of any new unit or program of instruction for academic credit with state funds before submitting plans for the new unit or program to the commission for its review, evaluation, and approval. No state funds shall be expended by any public institution on any new unit or program of instruction which has not been approved by the commission. Any plan submitted to the commission, or its staff, and not receiving final action by the commission within 10 months of submission shall be considered approved. The term `new unit of instruction,' includes the establishment of a college, school, division or institute, and includes the establishment of any new branch or campus. The term does not include reasonable extensions or alterations of existing curricula, or programs which have a direct relationship to existing programs. The commission may, under its rulemaking power, define the character of the reasonable extensions and alterations."
Pursuant to its rulemaking power, ACHE promulgated the following definitions:
 "Reasonable Extension or Alteration of a Unit or Program of Instruction: Modification of an existing unit or program of instruction which does not change its essential character, integrity, or objectives. Such modifications do not create new units or programs of instruction. Program changes may include reasonable extensions such as the addition of a new area of specialization (concentration, option, emphasis, focus, track), or reasonable alterations such as a change in degree nomenclature at the same degree level (except doctoral), or a change in program title or CIP code, provided these modifications are within the Commission guidelines. Provisions for reasonable extensions or alterations of units or programs of instruction do not relate to the addition of off-campus sites or adding any new unit or program."
Ala. Admin. Code § 300-2-1-.01(dd).
 "A reasonable extension or alteration of an existing unit or program of instruction is a modification which does not change the essential character, integrity, or objectives of the unit or program. Such modifications do not create new units or programs of instruction. Reasonable extensions and alterations of existing programs are defined as substantive or non-substantive. Substantive changes require Commission approval while non-substantive changes may be presented to the Commission by information item prior to implementation."
Ala. Admin. Code § 300-2-1-.06(1).
[3] The plaintiffs argue that, under this tolling agreement, their complaint was timely filed. However, that issue is not before us on this permissive appeal.
[4] The plaintiffs urge us to consider all issues relevant to whether Sirote Permutt and Simpler are entitled to a summary judgment on statute-of-limitations grounds. Specifically, they argue that, regardless of when their claims accrued, Sirote 
Permutt and Simpler have waived the defense of the statute of limitations by failing to assert it as required under Rule 8(c), Ala.R.Civ.P., in their first responsive pleading, and that this Court should therefore affirm the trial court's order, even if the trial court's determination that the claims accrued on December 30, 1993, the date of the judgment in the ACHE case, is incorrect.
We confine our inquiry to the single issue of law presented to us by the trial court's order and by Sirote Permutt and Simpler's petition for permission to appeal. See Rule 5, Ala.R.App.P. Thus, we decide only the question when the plaintiffs' claims accrued. We do not decide whether Sirote Permutt and Simpler waived the defense of the statute of limitations, an issue that the trial court apparently has not considered or ruled on.
[5] Recently, three Justices, in a plurality opinion, indicated that they would reject the Michael rule. Ex partePanell, 756 So.2d 862 (Ala. 1999). However, because the plurality's conclusion in Panell would have been a departure from precedent, the plurality stated, "[W]e would apply this new rule prospectively only, i.e., to legal-malpractice actions filed after the date of this decision," December 30, 1999. This present action was filed before the date of the Panell
decision. The Michael rule applies. *Page 47