Josephine HARDIN, individually and as Administratrix of the Estate of Edie L. Houseal, Deceased, Plaintiff,

v.

CITY OF GADSDEN, Defendant.

Civ. A. No. 89–C–2164–M.

United States District Court, N.D. Alabama, M.D.

May 19, 1993.

Robert M. Shipman, Earl D. McNeal, Huntsville, AL, for Josephine Hardin.

Don G. DeCoudres, Birmingham, AL, Donald R. Rhea, Gadsden, AL, for James Hayes, Sheriff of Etowah County.

Don G. DeCoudres, Birmingham, AL, Jack Floyd, Floyd Keener Cusimano & Roberts, Gadsden, AL, for Robert Hitt, Marion T. Smith, Billy Ray McKee, Jesse F. Burns, W.A. Lutes, Lawrence Presley and Billy Ray Williams.

Julius F. Parker, Jr., Jennifer Parker La-Via, Parker Skelding Labasky & Corry, Tallahassee, FL, Roger W. Kirby, City of Gadsden, Legal Dept., Gadsden, AL, for John Morris and City of Gadsden.

Don G. DeCoudres, Birmingham, AL, for John Railey.

## MEMORANDUM OF OPINION DENYING MOTION FOR RECUSAL

CLEMON, District Judge.

After the Court granted plaintiff's motion for a new trial, Attorney Julius F. Parker, representing the defendant City of Gadsden, then suggested in writing that the undersigned judge disqualify himself from further proceedings in this cause. The "suggestion" is ostensibly made because this judge has allegedly "... displayed an obvious bias in favor of the Plaintiff in this action or, conversely, against the Defendant City." Recusal Motion ("RM"), p. 1.

1. While the Gadsden City Jail was being renovated, its inmates and detainees were housed in the Etowah County Jail each day.

2. The defendants initially struck all three black venirepersons from the jury. Being of the opin-

Upon consideration of all of the facts surrounding the recusal motion, this judge concludes that a reasonable person, knowing these facts, would not harbor doubts concerning his impartiality. Moreover, the recusal motion is untimely.

## I.

This case arises out of the death of a pretrial detainee in the constructive custody [1] of the City of Gadsden, Alabama. Edie Houseal's behavior in the last few days of her life was, according to the Eleventh Circuit, "bizarre." *Hardin v. Hayes*, 957 F.2d 845, 847, 851, n. 9 (11th Cir.1992). In 1989, plaintiff Josephine Hardin, Houseal's administratrix, sued Etowah County, the City of Gadsden, the sheriff, jailer, and police chief under 42 U.S.C. § 1981 and the Alabama wrongful death statute. This judge dismissed several of the original defendants on their motions for summary judgment, and it held that the county sheriff and chief jailer were entitled to qualified immunity in their official capacities. In *Hardin, supra,* the Eleventh Circuit held that the county sheriff, county jailer, and police chief were entitled to qualified immunity in their individual capacities on the federal civil rights claim.

The Circuit expressly noted that "[b]ecause, Hardin's federal suit against the City [of Gadsden] remains viable, [its] opinion in no way [affected] the adjudication of her pendant state claim which [was] also pending in the district court." *Id.* at 851 n. 12. It also noted that the City of Gadsden's motion for summary judgment had been denied by this judge, and that Gadsden had failed to file the jurisdictional notice of appeal. *Id.* at 848 n. 4.

Following the remand, the case proceeded to trial on the merits of the pendant state claim against the sheriff, chief jailer, police chief John Morris and the City of Gadsden. The federal civil rights claim against the City of Gadsden also proceeded. After the jury was chosen,[2] and the first three witnesses

ion that the defendants lacked a race-neutral reason for striking two of the three blacks, this judge ordered that those two blacks serve on the jury.

called, the sheriff and chief jailer reached a settlement with plaintiff. When the jury returned its verdict in favor of the City of Gadsden, this judge summarily granted plaintiff's motion for a new trial. Trial Transcript ("T"), 672.

Like the plaintiff and her intestate, by sheer happenstance, this judge's ancestral roots are also African.

## II.

In the recusal motion, The City of Gadsden enumerates twelve separate grounds for recusal. Nine of these grounds are based on various pretrial, trial and post-trial rulings by this judge.[3] The City also maintains that this judge improperly questioned witnesses, and that he invited plaintiff to make a motion for a new trial.

Finally, the City says that this judge's alleged "bias in favor of the Plaintiff was ... noticed by members of the press who attended the trial, as indicated by [an] editorial from the Gadsden Times attached [to the recusal motion.]"[4] This final ground for recusal is so utterly lacking in legal merit as to warrant no response by this Court.

## A.

Rule 614(b) of the Federal Rules of Evidence provides that "[t]he court may interrogate witnesses, whether called by itself or by a party." Of course, counsel is free to object to the Court's questions as they are posed "... or at the next available opportunity when the jury is not present." FRE 614(c). It is the custom of this judge to instruct the jury in his opening instructions that no special weight should be given to a question or its answer simply because the Court deemed it appropriate to ask the question. This judge did not depart from that practice in this case.[5] Counsel for the City of Gadsden was obviously aware of the City's right to object to the judge's questions and/or manner of questioning. In fact, he did object to this judge's questioning on one occasion; and on that occasion, the objection was sustained. T. 492, lines 12–23.

## B.

The City's suggestion that this Court's denial of summary judgment is further grounds for recusal is also without merit. The Court, in fact, denied the City's attempted "second bite at the apple," i.e., its motion for summary judgment on remand. The same motion had been denied prior to the interlocutory appeal in *Hardin*. The Eleventh Circuit specifically spoke to the issue. It said that "... Hardin's federal suit against the City remains viable ..." *Hardin, supra,* 851 n. 12; *See also Id.* at 848 n. 4. Under the law of the case doctrine, the issue was settled. *Barber v. International Brotherhood of Boilermakers,* 841 F.2d 1067, 1072 (11th Cir. 1988); *Dorsey v. Continental Casualty,* 730 F.2d 675, 678 (11th Cir.1978); *Carpa v. Ward Foods, Inc.,* 567 F.2d 1316, 1319 (5th Cir. 1978).

Wholly aside from the law of the case, there existed genuinely disputed factual issues relating to City policy and policymakers. These disputed factual issues also precluded summary judgment.

---

3. These include the Court's denial of The City of Gadsden's Motion For Summary Judgment (Ground 1), its allowance of the pendant state claim (Ground 2), its requirement that the City compile and produce certain records at trial (Ground 3), its sustaining of plaintiff's objections before they were made (Ground 4), its denial of The City of Gadsden's Motion For A Directed Verdict and refusal to permit comment on a case (Ground 5), its instructions on "general damages" (Ground 6), its instructions on punitive damages (Ground 7), its refusal to apply Alabama Wrongful Death Statute (Ground 8), and its granting plaintiff's motion for a new trial (Ground 9).

4. The trial was held in Birmingham, Alabama.

5. The opening instructions included the following:

"During the trial of the case, I will occasionally question witnesses on the stand. Please do not infer from any questions I put to a witness that I have any opinion as to how this case should be decided. The questions that I put to a witness are designed to flesh [sic] out his or her testimony, to make it clear what the witness is saying or not saying. And you should not give any special weight or be influenced by the fact that I have asked a witness a particular question." T. 49.

### C.

The Court permitted the state claim for wrongful death to proceed over the city's objection. Aside from the fact that the Pretrial Order expressly preserves the claim,[6] the Eleventh Circuit in *Hardin*, 957 F.2d at 851 n. 12, implicitly allowed the trial of the wrongful death claim on remand. 851 n. 12.

### D.

While being questioned about suicides in the City Jail, Police Chief Morris' memory needed refreshing. He testified that written reports of suicides were maintained by the City. T. 474. Plaintiff's counsel indicated on the record that he had requested these reports prior to trial but the City had not provided them. T. 474, line 19. The Court then ordered that the reports be produced. The City never objected to producing the reports at trial.

Mr. Parker plays fast and loose with the truth when he says in his recusal motion, "... Judge Clemon ordered the City to compile and bring to court on the next day all written records as to suicides and suicide attempts in the Gadsden Count [sic] Jail prior to the death of decedent Edie Houseal." RM, p. 3.[7]

### E.

The assertion of Mr. Parker that "Judge Clemon sustained Plaintiff's objections

throughout the trial before they were made and on several occasions *made* and then sustained objections for the Plaintiff", RM, p. 3 paragraph 5, is likewise a distortion of the truth.[8]

### F.

Mr. Parker is absolutely correct that this judge cut short his argument concerning *Mandel v. Doe*, 888 F.2d 783 (11th Cir.1989). RM, p. 3, paragraph 6. That case has a direct bearing on the issue of whether the physician who treated Edie Houseal was a policymaker for purposes of § 1983 liability. Although the case was indeed helpful to plaintiff, her counsel was apparently unaware of it. Having represented the defendant in that very case, Mr. Parker was well aware of its holding. Apparently fearing its impact, Mr. Parker did not cite the case.

When this judge's independent research uncovered *Mandel* and he cited it in denying the City of Gadsden's motion for a directed verdict at the end of plaintiff's case, T. 587, Mr. Parker then sought to "... amplify on the reason to what the court decided because [he was] intimately familiar ..." T. 588. It was this judge's feeling that Mr. Parker owed a Rule 11 duty of candor to the court;[9] and that by breaching that duty, he had

---

6. Paragraph 2 of the Pretrial Order says: "This action arises under 42 U.S.C. § 1983 and the Alabama Wrongful Death Act, by way of pendant jurisdiction." Nowhere in its Statement of Position (Paragraph 5(c), p. 4) or elsewhere in the Pretrial Order does the City of Gadsden object to the pendant state claim.

7. The trial transcript reflects that Police Chief Morris testified first that the City had made a report of each suicide in the City Jail. T. 474, lines 8–10. He then testified that those reports were maintained in the office of the Gadsden Police Department. T. 474, lines 13–15. The Court then responded:
   "I would like to have the reports of each suicide or attempted suicide in the City of Gadsden since December 26, 1986. They should be in the police files, shouldn't they?"
   Mr. Parker: Yes, sir.
   The Court: All right. Could someone at the next recess call the Gadsden Police Department and have someone bring those reports down?
   Mr. Parker: Yes, sir.

8. The transcript is, of course, the best evidence of what actually transpired at trial. It clearly shows that plaintiff's counsel made objections prior to a ruling thereon by this judge. Eschewing the role of an automaton, this judge on many occasions observed counsel for both plaintiff and defendant rising to make a valid objection, and it promptly ruled on the anticipated objection. Defendant's counsel benefitted from this expedited procedure at least as often as plaintiff's counsel. T. 292, 355, 384, 419. Though plaintiff made few objections during the trial, they were not all sustained. See, e.g., T. 101, 178. Defendant's objections were often sustained. See, e.g., T. 75, 139, 146, 174, 175, 188.

9. *Jorgenson v. Volusia County*, 846 F.2d 1350 (11th Cir.1988), held under similar facts that the lawyer had violated Rule 11 and affirmed the imposition of sanctions.

forfeited his privilege of addressing the court on the *Mandel* holding.

### G.

Mr. Parker erroneously asserts that "Judge Clemon, *over Defense objections,* gave an instruction on general [i.e., compensatory] damages despite the fact that Plaintiff presented *no evidence* whatsoever of damages." (first emphasis supplied). The transcript of the charge conference (T. 617–621; 646–47) reveals that *Mr. Parker never posed an objection to the compensatory damages instructions.*[10] More incredibly, Mr. Parker himself, in writing, requested instructions on compensatory damages![11]

### H.

The eighth and ninth grounds of the recusal motion lend no support whatsoever for a claim of extra-judicial bias. Although the City of Gadsden vehemently objected to instructions on punitive damages, Alabama law is clear that only punitive damages may be awarded in a wrongful death claim. It was therefore unnecessary for plaintiff to specifically pray for them in his complaint.

The Court's failure to apply Alabama's survival statute[12] to plaintiff's civil rights claim was based on its view that the application of the survival statute would defeat the compensation and deterrence goals of § 1983,[13] by precluding *any* compensation when the civil rights victim is killed.

### I.

As the tenth ground of its recusal motion, the City of Gadsden alleges that this judge *"invited* the Plaintiff to make a motion." RM, p. 4, paragraph 10. In point of fact, when the Court observed plaintiff's counsel rising from the table after the jury had been excused, it asked, "Is there a motion from the plaintiff? T. 672. The Court simply posed the question before counsel had an opportunity to speak. The recusal motion omits mentioning that at the close of plaintiff's case, after the jury had been sent to the jury room, as Mr. Parker rose from his seat at counsel table, the Court announced: "The defendant's motion for a directed verdict on the § 1983 claim against the defendant Morris is granted. The defendant's motion for a directed verdict on the state law claims against defendant Morris is granted." T. 584. Thus, without a word from Mr. Parker, invited or otherwise, the Court granted his motion to dismiss all claims against Police Chief Morris.

### J.

Finally, this judge indubitably granted plaintiff's motion for a new trial *instanter.* He had sat through the trial, heard and reviewed all of the evidence; and, equally importantly, he had observed the demeanor of each of the jurors throughout the trial. He also had observed the facial expressions and reactions of several of the jurors, including the one later selected as foreman, as the black witnesses testified and as one of plaintiff's counsel, Mr. Shipman, spoke sans a Southern drawl. As the law does not require a futile act, there was no need for further proceedings by this judge to determine whether the verdict was supported by the evidence.

### III.

▉ "Ordinarily, a judge's rulings in the same or a related case may not serve as the basis for a recusal motion." *McWhorter v. City of Birmingham,* 906 F.2d 674, 678 (11th Cir.1990). This judge's rulings in various aspect of the case account for three-fourths of the grounds cited in the City of Gadsden's

---

10. This is not to suggest that such objection, if it had been made, would have been sustained.

11. See Defendant's Requested Jury Instructions 8, 9, 10, and 11; and Defendant's Requested Special Interrogatory Verdict, Count I, Question 3, and Count II, Question 3.

12. The City erroneously says that "Judge Clemon refused to apply the Alabama Wrongful Death Statute...." It intended to complain that this judge failed to apply the Alabama Survival Statute, § 6–5–462, *Code of Alabama of 1975.*

13. *Robertson v. Wegmann,* 436 U.S. 584, 590–91, 98 S.Ct. 1991, 1995–96, 56 L.Ed.2d 554 (1978); *Burnett v. Grattan,* 468 U.S. 42, 53, 104 S.Ct. 2924, 2931, 82 L.Ed.2d 36 (1983).

recusal motion. These grounds are insufficient as a matter of law.

■ The other three alleged grounds of recusal are either tenuous or unsupported. The questions put to witnesses by the Court displayed no bias in favor of plaintiff or against the City of Gadsden, as shown by the entire record. And the record clearly shows that both the City of Gadsden and the plaintiff received the benefits of summary action by the Court. "A judge should not recuse himself based upon unsupported, irrational, or tenuous allegations." *Giles v. Garwood,* 853 F.2d 876, 878 (11th Cir.1988), *citing United States v. Greenough,* 782 F.2d 1556, 1555–59 (11th Cir.1986).

Under these circumstances, a reasonable person,[14] knowing all of the relevant facts, would not harbor doubts concerning this judge's impartiality.

### IV.

■ The recusal motion must also be denied because it is untimely. "Counsel, knowing the facts claimed to support a § 455(a) recusal for appearance of partiality, may not lie in wait, raising the recusal issue only after learning the court's ruling on the merits." *Phillips v. Amoco Oil Company,* 799 F.2d 1464, 1472 (11th Cir.1986). See also, *United States v. York,* 888 F.2d 1050, 1053–1056 (5th Cir.1989). Here, the City of Gadsden never hinted that this judge should disqualify himself until over a month after the trial and the judge had granted a motion for a new trial. It simply waited too long.

For all of these reasons, the Suggestion of Recusal is DENIED.

---

14. In determining the relevant facts, a reasonable person would review the entire 672 pages of the trial transcript instead of relying on the seventeen pages appended to the City's recusal motion.