Mary Claire **ADAMS**, Plaintiff,

v.

**AMERICAN HOME PRODS. CORP.,
et al., Defendants.**

No. Civ.A. 00–D–1481–N.

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 30, 2000.

Ted L. Mann, Mann & Cowan, Birmingham, AL, for plaintiff.

Robert L. Lichenstein, Jr., Marcie A. Paduda, Maibeth J. Porter, Thomas Werth Thagard III, Katharine A. Weber, Maynard, Cooper & Gale, Birmingham, AL, for American Home Products.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Plaintiff Mary Claire Adams' Motion To Remand, which was filed on November 6, 2000 along with a supporting brief. Defendant American Home Products Corporation filed a Response on November 22, 2000. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Plaintiff's Motion is due to be granted.

## I. FACTUAL BACKGROUND

This is one of several cases presently pending in the Middle District of Alabama that involves tort claims arising from the sale of Redux and Pondimin, two diet medications manufactured by American Home Products Corporation. Plaintiff Mary Claire Adams filed this lawsuit in the Circuit Court of Bullock County, Alabama. She brought suit against her physician (Dr. Kynard L. Adams), the pharmacies that distributed the diet drugs (Teva Pharmaceuticals, Inc. and Abana Pharmaceuticals, Inc.), and American Home Products Corporation. The suit was subsequently removed to federal court, based on allegations of complete diversity of citizenship. *See* 28 U.S.C. 1332.

## II. DISCUSSION

Removal of a case from state to federal court is proper if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a). A federal district court may assert jurisdiction in a case involving complete diversity of citizenship between the parties, provided that the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

The defendant, as the removing party, bears the burden of establishing federal jurisdiction. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir.1996). Removal statutes are strictly construed because of the significant federalism concerns raised by removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Seroyer v. Pfizer, Inc.*, 991 F.Supp. 1308, 1312 (M.D.Ala.1997). "All doubts [and uncertainties] about federal court jurisdiction must be resolved in favor of a remand to state court." *Seroyer*, 991 F.Supp. at 1312

(citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994)).

■ American Home Products argues that each of the three non-diverse parties have been fraudulently joined. Therefore, it contends that the court should proceed as if there is complete diversity among the parties. In analyzing whether joinder is fraudulent, the court "should resolve all questions of fact and controlling law in favor of the plaintiff." *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989). The court may consider "any submitted affidavits and/or deposition transcripts." *Id.; see also Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir.1995). If there is no possibility that the plaintiff can establish a cause of action against a resident defendant, then the court will disregard the defendant's citizenship for jurisdictional purposes. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir.1996). Because American Home Products' motion fails if any Alabama citizen has not been fraudulently joined, the court addresses the motion only with respect to Dr. Adams.

■ Ms. Adams and Dr. Adams are both citizens of Alabama. The issue, then, is whether American Home Products has met its "heavy" burden of proving that Dr. Adams was fraudulently joined. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997). The court finds that it has not. The record does not clearly establish that there is no possibility that Ms. Adams can recover from Dr. Adams. (Compl.¶ 15.) *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983).

It is undisputed that Dr. Adams prescribed Ms. Adams two drugs, Redux and/or Pondimin, for a one-year time period beginning in 1996. Ms. Adams took these drugs "as prescribed." (Compl.¶ 7.) She filed her claim September 27, 2000, and it was removed to federal court. A claim against Dr. Adams is governed by the Alabama Medical Liability Act ("AMLA"), which basically establishes a two-year statute of limitations for medical malpractice actions. *See* ALA.CODE § 6–5–482 (1975). Specifically, the statute provides:

> (a) All actions against physicians, surgeons, dentists, medical institutions, or other health care providers for liability, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act . . .

*Id.* § 6–5–482(a).

The court rejects Defendant's argument that a cause of action for medical malpractice accrues when the tortious act or omission takes place, rather than when the plaintiff first suffers injury. This argument rests upon the faulty assumption that the Alabama Supreme Court would construe AMLA's statute of limitations in precisely the same manner that it has interpreted the Alabama Legal Services Liability Act ("ALSA").[1] *See Ex parte Pa-*

---

1. Because American Home Products has raised an question of state law, the *Erie* doctrine comes into play. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). A federal court sitting in diversity applies the laws of the forum state as

they have been last pronounced by the state's highest court. *See, e.g., Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir.1982) ("[i]n determining the law of the state, federal courts must follow the decisions of the state's highest court"); *Bowden v. Wal–Mart Stores,*

*nell,* 756 So.2d 862, 872 n. 4 (Ala.1999) (Cook, J., concurring in result). In a lone concurring opinion, Justice Cook claimed that AMLA and ALSA should be read similarly because he believed "the operative language" of the statutes is "similar." *Id.* The court disagrees.

American Home Products correctly recognizes that the Alabama Supreme Court has interpreted ALSA's statute of limitations as running from the date of the alleged tortious act, regardless of when injury results. *See, e.g., Ex parte Seabol,* 2000 WL 1234626 at *2, —— So.2d at —— (Ala.2000), *Panell,* 756 So.2d at 864–69. But whatever may be said about ALSA claims, it is firmly established that the clock does not begin to run on AMLA claims until the plaintiff first suffers injury. *See, e.g., Schuffert v. Morgan,* 2000 WL 869608 at *5–6, —— So.2d at —— – —— (Ala.2000); *Mobile Infirmary v. Delchamps,* 642 So.2d 954, 958 (Ala.1994); *Guthrie v. Bio–Medical Labs., Inc.,* 442 So.2d 92, 95 (Ala.1983); *Ramey v. Guyton,* 394 So.2d 2, 4 (Ala.1980).

Justice Cook's concurrence, which suggested that *Panell* may have retroactively and magically "rewritten" AMLA, is not law. *See Flintkote,* 678 F.2d at 945. For the record, Justice Cook's observations went as follows: First, Justice Cook noted that ALSA was enacted 13 years after AMLA. Then, he stated that the Court generally accords a later statute similar meaning to an earlier statute with similar terms. *See Panell,* 756 So.2d at 873. He observed that ALSA was written with language similar to AMLA. *See id.* Then, he took the Court to task for doing violence to cardinal rules of statutory interpretation in reading ALSA's statute of limitations differently from how it had consistently read AMLA's. *See id.* at 872–73. Finally, for some inexplicable reason, and purely in dicta, he warned that the court's interpretation of ALSA would necessarily work a change in its interpretation of AMLA, a

*Inc.,* 99–D–980–E at 27, —— F.Supp.2d ——, —— (M.D.Ala.2000); *Johnson v. Fleet Fi-*

wholly separate statute with a separate, well-settled meaning. *See id.* at 872 n. 4.

This prediction has been proven erroneous. The Alabama Supreme Court quite recently reaffirmed that AMLA's statute of limitations is tolled until the wrongful act "results in legal injury to the plaintiff." *Schuffert,* 2000 WL 869608 at *5, —— So.2d at —— (quoting *Delchamps,* 642 So.2d at 955). There were good reasons for the court's decision. First, AMLA and ALSA were enacted more than a decade apart, as part of two wholly separate legislative packages, by two wholly different legislative sessions, with two wholly different sets of legislators. Second, there is no indication that the public policies underlying the two statutes in any way justify a similar interpretation of their statutes of limitations. *Cf. Thomasson v. Diethelm,* 457 So.2d 397 (Ala.1984) (discussing legislative intent behind ALA.CODE § 6–5–482 (1975)).

Sound principles of *stare decisis* counsel against overturning well-established law. *See Ex parte Grantham,* 540 So.2d 779, 781 (Ala.1988). The court declines American Home Products' invitation to rewrite AMLA. That is not a task for the judiciary, *see Laidlaw Transit, Inc. v. Alabama Educ. Ass'n,* 769 So.2d 872, 881 (Ala.2000); *Pool v. State,* 570 So.2d 1260, 1263 (Ala. Crim.App.1990), and the invitation is particularly inappropriate when tendered to a federal court sitting in diversity. Accordingly, the court finds that the statute of limitations for AMLA claims does not begin to run until Plaintiff first suffers injury. *See Schuffert,* 2000 WL 869608 at *5– 6, —— So.2d at —— – ——.

In this case, the evidence does not strongly suggest that Ms. Adams' heart valve damage began seasonably after she first began taking Redux or Pondimin. Unlike some lawsuits against American Home Products that are presently pending in this District, it is undisputed in this case

*nance, Inc.,* 785 F.Supp. 1003, 1006 (S.D.Ga. 1992).

that Ms. Adams was prescribed and took these pills until some time in 1997. There is no medical or scientific evidence suggesting that the damage caused by Redux of Pondimin may not have accrued until some time in late 1998. Based on the sparse, undeveloped record in this case, the court cannot find that the delay between Ms. Adams' ingestion of Redux or Pondimin and the onset of her resulting injuries was less than one year. *See Ramey*, 394 So.2d at 4.

Nor can the court find that Ms. Adams' claim is barred because she discovered her cause of action more than six months before filing this claim. *See* ALA.CODE § 6–5–482(a) (1975). Her Complaint, when read in the most favorable light, *see* FED. R.CIV.P. 8(f), squarely alleges that she "did not learn of any damage ... until June, 2000." (Compl.¶ 7.) American Home Products flatly states "this allegation is false." (Mot. at 11.) As support, it points to the official notice of a nationwide settlement relating to Redux and Pondimin, which was disseminated in December 1999. It also notes that Ms. Adams must have exercised her opt-out rights on or before March 30, 2000. (*Id.* at 11–12.) Thus, it contends that Ms. Adams' knew about her cause of action prior to September 27, 2000. The court is not so sure.

Viewing the evidence in the light most favorable to Ms. Adams, the court notes the possibility that Ms. Adams did not discover her cause of action until March 30, 2000. Thus, Ms. Adams' civil action, which was filed September 27, 2000, could fall within the Code's six month safe harbor provisions. *See* ALA.CODE § 6–5–482 (1975). Plaintiff's counsel is surely aware of the Federal Rules of Civil Procedure, as well as his ethical obligations and responsibilities as an officer of the court. *See* FED.R.CIV.P. 11. Therefore, the court finds that Ms. Adams has a colorable cause of action against Dr. Adams. Because Ms. Adams and Dr. Adams are both citizens of Alabama, the court lacks subject matter jurisdiction over this case.

In reaching this result, the court needs not fix, for all intents and purposes, at precisely what point Redux and Pondimin may have begun to inflict damage upon their alleged victims. It suffices to say that line-drawing is sometimes an imperfect exercise. In this case, based upon the record as a whole, Ms. Adams' claims fall squarely on the side of the line favoring remand. Given this finding, the court needs not address the merits of the arguments presented by Teva Pharmaceuticals, Inc., and Abana Pharmaceuticals, Inc.

### III. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Plaintiffs' Motion To Remand be and the same is hereby GRANTED, and that this action be and the same is hereby REMANDED to the Circuit Court of Bullock County, Alabama, pursuant to 28 U.S.C. § 1447(c). The Clerk of Court is DIRECTED to take all steps necessary to effectuate said remand.