Tania GARDNER, et al., Plaintiffs,

v.

ALLSTATE INDEM. CO.,
et al., Defendants.

No. CIV. A. 98–D–480–N.

United States District Court,
M.D. Alabama,
Northern Division.

May 15, 2001.

For Plaintiffs: Jonathan A. Waller, Robert G. Methvin, R. Brent Irby, Campbell, Waller & Loper, Birmingham, AL.

For Defendants: Henry T. Morrissette, Louis E. Braswell, Hand Arendall, L.L.C., Mobile, AL; Jeffrey P. Lennard, Mark L.

Hanover, Donna J. Vobornik, Sonnenschein, Nath & Rosenthal, Chicago, IL.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is a dispute over whether to award Plaintiffs [1] their expenses incurred as a result of Defendants' [2] erroneous removal and the subsequent remand of this case to Alabama state court. The parties briefed their respective positions on February 26, 2001. Defendants issued a Response on March 7, Plaintiffs filed a Reply on March 13, and Defendants issued a Sur–Reply on March 23. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that an award of attorney's fees and costs in the amount of $31,306.52 is due to be entered.

## I. JURISDICTION AND VENUE

■ The court retains the power to award expenses associated with the remand of this case, pursuant to 28 U.S.C. § 1447(c). *See Montgomery & Larmoyeux v. Philip Morris,* 19 F.Supp.2d 1334, 1336–37 (S.D.Fla.1998). The parties do not contest personal jurisdiction or venue.

## II. STANDARD OF REVIEW

"An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

■ Prior to the Judicial Improvements and Access to Justice Act of 1988, courts normally focused on the presence or absence of good faith by the removing party when determining whether to tax costs and expenses. *See Judson v. Nissan Motor Co.,* 52 F.Supp.2d 1352, 1363 (M.D.Ala. 1999) [3] Presently, section 1447(c) makes no reference to the reasonableness of the removing party's actions. Rather, courts today must focus strictly on the existence of federal subject matter jurisdiction. *See Gray v. New York Life Ins. Co.,* 906 F.Supp. 628, 637 (N.D.Ala.1995).

At least two reasons dictate this statutory construction. First, Rule 11 already allows for sanctions for bad faith. Section 1447(c) and the Federal Rules of Civil Procedure both advance Congress's power to supervise the judiciary, and separate statutes should not be read as duplicative. *See Erlenbaugh v. United States,* 409 U.S. 239, 243–44, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972). Second, the 1988 amendment deleted the requirement that the case must have been "removed improvidently," but did not insert the term "bad faith," as a condition precedent to any award. Thus, "[w]e must, at least in the absence of strong and convincing evidence to the contrary, consider such sharply different wording to have been a deliberate choice by Congress." *Morgan Guar. Trust Co. of N.Y. v. Republic of Palau,* 971 F.2d 917, 923 (2d Cir.1992), *aff'g* 767 F.Supp. 561 (S.D.N.Y.1991).

■ The issue, therefore, is whether an award would further "overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties." *Morgan,* 767 F.Supp. at 563, *aff'd,* 971 F.2d 917. To be sure, a court may hesitate to tax a removing party that has acted reasonably. For example, this

1. "Plaintiffs" or "Gardner."

2. "Defendants" or "Allstate."

3. Prior to 1988, the statute provided in pertinent part that "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of costs." 28 U.S.C. § 1447(c) (superseded).

court has typically declined to award fees in fraudulent joinder cases unless the removing party's actions were unreasonable, or federal jurisdiction was patently lacking at the time of removal. *See Grace v. Interstate Life & Acc. Ins. Co.*, 916 F.Supp. 1185, 1192 (M.D.Ala.1996) (noting how it is often "far from a simple determination", whether a party has been fraudulently joined). But Congress has not limited the court's discretion in the first instance.

## III.  FINDINGS OF FACT

Tania Gardner is a named plaintiff in this class action. She purchased auto insurance from Allstate in August 1997. The policy provided that Allstate would pay the "actual cash value of the property" at the time of loss. Two months later, Gardner got in a wreck. She filed a claim with Allstate, and the company determined that her vehicle was a total loss. Allstate offered to settle the claim for one amount, Gardner rejected the offer, and she brought suit in state court in April 1998.

In her Complaint, Gardner proposed to represent a class of Alabama residents who were wronged by Allstate's system for paying its insureds. The system allegedly undervalued the automobiles and, therefore, breached the contractual provisions requiring payment of "actual cash value." Plaintiffs brought only two state law claims: breach of contract and unjust enrichment. Plaintiffs expressly disclaimed punitive damages and limited their damages to $74,500 per putative class member, exclusive of interests and costs.[4]

Allstate removed in April 1998, claiming diversity of citizenship with the amount in controversy exceeding $75,000. At that time, Allstate's attorneys knew or should have known that this court lacked jurisdiction, but they removed anyway, almost certainly because they perceived certain tactical advantages from evading the state court's jurisdiction. Moreover, after removal, Allstate's attorneys filed briefs in another class action pending before the Eleventh Circuit that was likely to further confirm the absence of jurisdiction, but they never informed Plaintiffs or the court of such developments.[5] Nor did they request a stay of this case in the meantime. Hence, this court certified Plaintiffs' class, after Plaintiffs amended their complaint to include new tort claims and a prayer for punitive damages. The Eleventh Circuit summarily denied Allstate's Rule 23(f) appeal.

Throughout this case, Allstate engaged in tactics designed to frustrate orderly progress or run up Plaintiffs' litigation costs. One of Allstate's more egregious acts was waiting until October 11, 2000 to inform Plaintiffs of its decision to move to dismiss this case for lack of jurisdiction. Allstate probably delayed because Plaintiffs' attorneys had to mail notice to the class on October 13, and Allstate's attorneys wanted to put Plaintiffs in the precarious position of either missing the deadline, wasting money by meeting the deadline, or seeking an extension that would further prolong this matter.[6]

---

4.  Compl. ¶¶ 25–31; Amend. to Compl. at 1.

5.  *See* Brief Of Appellees Allstate Indemnity Company And Allstate Insurance Company, filed in *Morrison et al. v. Allstate Indemnity Co., et al.*, 99–14141–H (Jan. 18, 2000). The Eleventh Circuit heard oral argument May 24, 2000 and rendered its opinion September 26, 2000. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1260–61 (11th Cir.2000) (noting that panel requested supplemental briefs

and questioned counsel about subject matter jurisdiction).

6.  Another devilish tactic was waiting until eight days before the pre-trial conference to file multiple pleadings that totaled several hundred pages, including exhibits and attachments. Though any of these motions, if granted, would have gutted Plaintiffs' case, Plaintiffs did not receive copies until several days later.

Unsatisfied with this court's rulings on various matters, Allstate totally disavowed its removal theory and moved to remand on October 13. Allstate now argued that the court lacked jurisdiction because Plaintiffs could not satisfy the "amount in controversy" requirements of 28 U.S.C. § 1332. Plaintiffs sought to amend their Complaint, either by bringing a claim for infliction of emotional harm on behalf of the named plaintiffs or a RICO claim on behalf of the class. Plaintiffs also opposed Allstate's motion in good faith, but they stipulated to remand after the court denied Plaintiffs' motion to amend as untimely.

## IV. DISCUSSION

Allstate's devilish choices force the court to interpret the fee-shifting provision of section 1447(c). As explained below, courts should ask themselves two questions before awarding fees. First, was the removal erroneous? Second, was the non-removing party at fault for the erroneous removal? If the first answer is "yes" and the second is "no," then the court should permit recovery if such an award is fair under all circumstances, taking into account the public and private harms caused.

### A. *Step One: Erroneous Removal*

■■■ In determining whether Allstate erroneously removed this case, the court focuses on Allstate's actions with respect

to the original complaint. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n. 13 (11th Cir.1994) ("[t]hat plaintiff *might* ask for or recover more *after* removal is not sufficient to support jurisdiction.") Plaintiffs' Complaint brought two simple state law claims for breach of contract and unjust enrichment. Plaintiffs disclaimed punitive damages and limited recovery to $74,500 per class member. Defendants removed on a number of meritless grounds. The only one that warrants discussion is the assertion that, at the time of removal, this Circuit permitted aggregation of damages from the creation of a constructive trust. As explained below, Allstate's removal was erroneous, and the court lacked subject matter jurisdiction *ab initio*.

Plaintiffs sought a constructive trust on "those monies by which Allstate has been unjustly enriched as a result of its improper and bad faith" conduct.[7] In their Notice Of Removal, Defendants erroneously relied on *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir.1996), for the proposition that "the total value of the constructive trust must be considered as a collective right to which the putative class would be entitled as a whole."[8] Allstate's theory had no basis in law.

The *Tapscott* Court carefully limited its holding to aggregation of punitive damages, *see id.* at 1358–59, which Plaintiffs'

---

The filings included: (1) a "Motion For Court To Make Pretrial Rulings Pursuant To Rule 16 On Critical Issues Of Law For The Purpose Of Simplifying Issues That Make This Case Unnecessarily Complex" that raised nearly the same issues contained in an earlier motion for summary judgment (which Allstate withdrew after Plaintiffs filed a Response but before the court had ruled); (2) a motion to certify a question to the Alabama Supreme Court, when the question had laid dormant since the class certification ruling one year earlier; and (3) a notice purporting to invoke an "appraisal remedy" in the insurance contracts between Allstate and Plaintiffs' class members, even though counsel knew of this

clause as early as 1998 and knew the names of class members well before late January 2001.

The insurance policies gave Allstate the right to require an independent appraisal of the damaged vehicles before the insureds could file suit. The tardy invocation of this right, if not deemed waived by the jury, *see McMillan, Ltd. v. Warrior Drilling & Eng'g Co.*, 512 So.2d 14, 37–38 (Ala.1986), was calculated to destroy the manageability of the class.

7. Compl. ¶ 27.

8. Notice Of Removal ¶ 15.

Complaint clearly disclaimed. Moreover, due to the prior precedent rule, *Tapscott* never had any binding value. *See Lindsey v. Alabama Tel. Co.*, 576 F.2d 593, 593–95 (5th Cir.1978) (holding that punitive damages are attributed *pro rata* to each class member); *Hall v. ITT Fin'l Serv.*, 891 F.Supp. 580, 583 (M.D.Ala.1994) (citing *Lindsey* and remanding case because punitive damages recoverable from life insurer "cannot be aggregated and attributed to the class as a whole to meet the jurisdictional amount.")

In purportedly relying on an extension of *Tapscott*, Allstate plainly disregarded the rule that a diverse defendant may not remove a class action unless each separate putative class member satisfies the amount in controversy requirements of 28 U.S.C. § 1332.[9] *See Zahn v. International Paper Co.*, 414 U.S. 291, 300–01, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 336, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). The narrow exception to this rule is "when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest." *Zahn*, 414 U.S. at 295, 94 S.Ct. 505 (quoting *Troy Bank of Troy v. G.A. White-head & Co.*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911)).

Courts in this District have regularly found that the aggregation principle does not apply when individuals assert equitable claims for actual damages arising from a contract. *See Seroyer v. Pfizer, Inc.*, 991 F.Supp. 1308, 1318 (M.D.Ala.1997) ("plaintiffs' unjust enrichment claim does not constitute a general 'disgorgement' attributable to the class as a whole"); *Crawford v. American Bankers Ins. Co.*, 987 F.Supp. 1408, 1412 (M.D.Ala.1997) ("[t]he unjust enrichment claims of putative class members may not be aggregated.")

Not surprisingly, in *Morrison*, 228 F.3d at 1260, the Eleventh Circuit also roundly rejected an argument by a class of plaintiffs, who sued Allstate and alleged that they met the "amount in controversy" requirement by aggregating their claims for breach of contract, unjust enrichment, and injunctive relief. According to the Court, "when multiple individuals assert rights arising from individual insurance policies, their claims are separate and distinct, and accordingly, may not be aggregated." *Id.* at 1264.

Allstate mischaracterizes the law when it says that *Morrison* was this Circuit's first binding case to reject the aggregation principle with respect to equitable damage theories. Even assuming Allstate is correct, the absence of prior precedent cuts against Allstate's removal theory, given the default presumption against aggregation in the first place. In any event, Allstate overlooks that *Morrison*, in fact, simply followed two binding decisions from "the Old Fifth"[10] that held that contractual damages may not be aggregated for jurisdictional purposes. *See Alvarez v. Pan Am. Life Ins. Co.*, 375 F.2d 992, 993–94 (5th Cir.1967); *Troup v. McCart*, 238 F.2d 289, 295–96 (5th Cir. 1956).

*Alvarez* held that each insurance policy is a separate contract. Thus, "rights due under an insurance contract are those of creditor and debtor, and are several and distinct from claims which other contract holders may have against the same insurance company." *Alvarez, supra* at 993–94. *Troup* likewise held that plaintiff-insureds had no common interest in the equitable

---

9. Defendants did not remove on the basis that 28 U.S.C. § 1367 overruled *Zahn*. Indeed, they have consistently disagreed with this premise.

10. The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *See Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

relief sought from suing their insurance company. Although all the claims grew out of separate policies with the same corporation, the Court concluded that " '[t]hey are not related to or dependent upon each other in any manner.' " *Troup, supra* at 295 (quoting *Andrews v. Equitable Life Ass. Soc'y,* 124 F.2d 788, 790 (7th Cir. 1941)). Allstate cannot distinguish these cases in any material way.

Of course, even if *Morrison* did reshape the law, Allstate would not necessarily be shielded from an award. Section 1447(c) authorizes remand "[i]f at *any time* before final judgment it appears that the district court lacks subject matter jurisdiction." The statute's fee-shifting provisions are not expressly limited to situations when removal was improper *ab initio,* and the public and private harms "incurred as a result of the removal," *Id.,* are the same regardless of the reason for the remand. *See infra* Part IV.C. For all these reasons, the court finds that Allstate's removal was erroneous, as contemplated by 28 U.S.C. § 1447(c).

### B. *Step Two: No Fault by Plaintiffs*

Given such a finding, the court now evaluates the conduct of Plaintiffs. As explained below, the more reasoned cases have denied section 1447(c) recoveries to non-removing parties that, in essence, caused the removal themselves. The court finds no such fault with Plaintiffs' conduct.

Two examples illustrate the proper application of section 1447(c). In *Barraclough v. ADP Auto. Claims Serv.,* 818 F.Supp. 1310 (N.D.Cal.1993), Barraclough filed suit in state court, alleging violations of California's human rights laws. The complaint listed no federal cause of action, but Barraclough's counsel informed defense counsel that he intended to raise an ADA claim. Defendant relied on such statements and removed, but Barraclough never amended her complaint to plead a federal question. *See id.* at 1311. Therefore, although the

court eventually found the removal erroneous, it taxed no costs.

Similarly, in *Avitts v. Amoco Prod'n Co.,* 53 F.3d 690 (5th Cir.1995), *appeal after remand,* 111 F.3d 30 (5th Cir. 1997), Avitts filed a complaint in state court that plead no explicit federal question but cryptically alleged "that the evidence will reflect that the damages caused by the Defendants are in violation of not only State law but also Federal law." *Id.* at 692. Defendants removed. The court remanded but declined to tax costs, for Avitts's poorly-drafted complaint invited the error committed by the defendants. *See id.* 111 F.3d at 32–33.

Various other remanding courts have denied recovery to non-removing parties with unclean hands. *See, e.g., Bankston v. Burch,* 27 F.3d 164, 169 (5th Cir.1994) (no award when court remanded for failure to join indispensable party; plaintiff's inartful complaint obscured jurisdictional facts that otherwise "would have been immediately apparent."); *Shrader v. Legg Mason Wood Walker, Inc.,* 880 F.Supp. 366, 368–71 (E.D.Pa.1995) (no award when defendants erroneously argued fraudulent joinder; plaintiff's "misleading description" of the parties caused removal). *Id.* at 368.

There was no improper behavior here. The court finds that Plaintiffs' Complaint was a model for any class hoping to sue diverse defendants in state court. Allstate is solely responsible for this case's faulty removal. Accordingly, in the next Subpart, the court considers whether a section 1447(c) award is "fair and equitable under all the circumstances." *Gray,* 906 F.Supp. at 633. It is.

### C. *Step Three: Totality of the Circumstances*

There is no fixed test under the third prong, given that awards are wholly discretionary. But as a general rule, courts have not compensated plaintiffs whose conduct was demonstrably inconsistent with

the statute's remedial purpose. *See Baddie v. Berkeley Farms, Inc.,* 64 F.3d 487, 490 (9th Cir.1995) (denying recovery when plaintiff plead federal and state claims, case was removed, and plaintiff dismissed federal claims and convinced court not to exercise pendant jurisdiction); *Bankston,* 27 F.3d at 169 (same when plaintiff anticipating adverse holding "request[ed] that in the event of a remand that we make an award of costs and attorneys' fees in his favor"); *Kunica v. St. Jean Fin'l, Inc.,* 63 F.Supp.2d 342, 352 (S.D.N.Y.1999) (same when plaintiff waited "two years and until after all of his claims were dismissed to address the issue of subject matter jurisdiction.")

In this case, Plaintiffs acted reasonably in all respects. Plaintiffs have several strong bases of recovery under Alabama law. Yet, because of the removal, they are back at square one, after a three-year odyssey in federal court. They will have to revisit issues of class certification and face a whole new round of appeals. Class certification is reviewed for an abuse of discretion, and the state and federal rules of civil procedure are not one and the same. After considering the circumstances of the remand, the effect on the parties, and the record as a whole, the court finds that an award of fees and expenses is fair and equitable.

### 1. Basic principles of federal jurisdiction

Four bedrock principles of federal jurisdiction dictate the court's finding. The court pauses briefly to restate those principles here.

■■ First, federal courts are tribunals of limited jurisdiction. We have the power to decide only certain types of cases, and the parties cannot consent to jurisdiction when it has not been authorized by Congress or the Constitution. *See Fitzgerald v. Seaboard Sys. R.R.,* 760 F.2d 1249, 1251 (11th Cir.1985) (per curiam). Second, the diversity jurisdiction statute, 28 U.S.C. § 1332, is strictly construed because of the significant federalism concerns raised by federal courts passing on matters of state law. *See Adams v. American Home Prods. Corp.,* 122 F.Supp.2d 1301, 1302 (M.D.Ala.2000).

■■ Third, a plaintiff is the master of his or her complaint. On the one hand, plaintiffs suing diverse defendants can avoid federal court by expressly limiting their prayer for damages to less than $75,000. *See Burns,* 31 F.3d at 1095. On the other hand, plaintiffs in an erroneously removed diversity case may warm to the fact that federal and state courts are equally competent at deciding matters before them, *see Steffel v. Thompson,* 415 U.S. 452, 460–61, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Insurance Co. of N. Am. v. English,* 395 F.2d 854, 859–60 (5th Cir. 1968), and subsequently elect to remain in federal court by amending their complaint, raising the amount in controversy, and curing the defects that existed at the time of removal. *See Caterpillar v. Lewis,* 519 U.S. 61, 70, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) ("the existence of subject-matter jurisdiction at time of judgment may shield a judgment against later jurisdictional attack."); *Texas Beef Group v. Winfrey,* 201 F.3d 680, 686–87 (5th Cir.2000). Fourth, and most obviously, a plaintiff is charged with knowledge of her complaint, and the amount of damages that she seeks. *See Burns,* 31 F.3d at 1095.

### 2. Fee-shifting under section 1447(c)

■ By enacting section 1447(c), Congress abrogated the American Rule and allowed for some fee-shifting along with a remand. As may be expected, the parties vehemently disagree about the extent of the award available. *See* 14C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE

§ 3739 at 478 (3d ed.1998) ("a lively practice has developed under this relatively new provision"). Plaintiffs request $174,000, which is all of the money they have spent since April 1998 litigating in federal court. Defendants, on the other hand, argue that Plaintiffs should receive nothing, for they did not move to remand, but instead fought to preserve federal jurisdiction.

Both parties read the statute incorrectly. The court finds that a proper section 1447(c) award accommodates each of the four jurisdictional principles listed in Part IV.C.1. *See Kanter v. Warner–Lambert Co.*, 52 F.Supp.2d 1126, 1132 (N.D.Cal. 1999) (shifting fees to deter removals that "waste the time and resources of both plaintiffs and the courts in this circuit."); *see also* Saul Levmore, *Strategic Delays and Fiduciary Duties*, 74 VA. L. REV. 863, 863–75 (1988) (discussing optimal means for minimizing externalities caused by ambiguously harmful acts).

Therefore, an aggrieved plaintiff is made whole when she is reimbursed for the full expenses of either: (1) seeking to remand the case; or (2) attempting in good faith to preserve federal jurisdiction after it has been challenged. The award also must necessarily include repayment for one's expenses in securing one's congressionally authorized remedy. Accordingly, the court will award Plaintiffs $31,306.52.

■■■ Plaintiffs base their request for $174,000 on the plain language of the statute, which suggests that recovery may be had for *all* of the monies spent by the aggrieved party litigating in the wrong forum. But courts have rightly rejected such requests. *See Avitts*, 111 F.3d at 32. As the *Avitts* court recognized, an award of this nature would eliminate the incentive for plaintiffs to oppose or try to cure erroneous removals swiftly.

An erroneously removed case remains on the federal docket until somebody points out that it does not belong there. When the court ultimately remands, it follows that the removing party's improper actions, by their very nature, have wrought needless litigation costs upon the other party, upset the sensitive principles of federalism underlying our nation's dual court system, and frustrated judicial economy.

Although plaintiffs suffer all of the first costs, no litigant can fully internalize all of the latter two costs. Rather, all the American people suffer from overcrowded dockets and needless state-federal friction. Plaintiffs who neither resist an erroneous removal, nor attempt to cure it by creating jurisdiction, contribute to such public harms. Thus, although a hefty award like Plaintiffs request would deter erroneous removals, the award also would: (1) discourage plaintiffs from evaluating the merits of removals; and (2) provide no disincentive to strategic delay and forum shopping by plaintiffs, who might wait until things go bad before they raise the jurisdictional issue themselves. *See Bankston*, 27 F.3d at 169; *Kunica*, 63 F.Supp.2d at 352.

Of course, comparative negligence law teaches that this social cost of delay is properly addressed by reducing recovery, rather than barring it. Therefore, Allstate likewise misreads the statute when it argues that Plaintiffs deserve nothing because they opposed Allstate's remand motion. It is reasonably foreseeable that a parity-minded plaintiff, who is reluctant to be whipsawed between state and federal court, will take good faith steps to remain in federal court by resisting a defendant's motion to remand. Such steps may include opposing the motion on its merits or moving to amend the complaint in the hope of raising a federal question or elevating the amount in controversy. *See Morgan*, 971 F.2d at 920–24.

Allstate's contrary argument is cobbled together from unpersuasive dicta and its take on the relevant House Report, which states that "the proposed amendment to section 1447(c) will ensure that a substantive basis exists for requiring payment of actual expenses incurred in *resisting* an improper removal ...". H. REP. No. 100–889 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6033 (emphasis supplied). Allstate's textualist argument fails on its own terms. A plaintiff may "resist" an "improper" removal by fighting to create proper federal jurisdiction, no less than he can "resist" by fighting to return to circuit court. *See Morgan, supra.* Moreover, court have recognized that the House Report cannot be taken for all it is worth, for it conflicts with the plain language of the statute. *See Shrader,* 880 F.Supp. at 370 n. 12; *see also Boca Ciega Hotel, Inc. v. Bouchard Transp.,* 51 F.3d 235, 238 (11th Cir.1995) (holding that courts must effectuate statutory language absent "overwhelming extrinsic evidence" to the contrary).

. If the court does not compensate plaintiffs like Tania Gardner, who act with a punctilio of an honor most sensitive, the court suboptimally deters erroneous removals and suboptimally protects plaintiffs' right to choose their forum. Here, Allstate would have succeeded in removing this case erroneously, and holding the jurisdictional defect in reserve for when litigation took an unfavorable turn. *Cf. Rudow v. Monsanto Co.,* 2001 WL 228163 at *6 (N.D.Cal.2001) (ordering parties to show cause why fees should not be taxed when defendant removed a case then moved to remand at "the eleventh hour").

The Second Circuit dealt with a situation like the one here. In *Morgan,* 971 F.2d at 918, the Republic of Palau erroneously removed by asserting that it was a foreign state entitled to original jurisdiction under the FSIA, 28 U.S.C. § 1603. The district court denied Plaintiffs' motion to remand, the case went to trial, and Plaintiffs obtained a $46 million verdict. On appeal, the Second Circuit *sua sponte* raised the issue of lack of jurisdiction, noting that Palau might not be a state because its voters had not approved a plebiscite. *See id.* at 919.

During appellate argument, Plaintiffs (who had originally moved to remand) strongly argued that federal jurisdiction existed. On the other hand, Palau (which had removed) now conceded that it was not a sovereignty, and it sought remand. *See id.* at 924. The Second Circuit ordered remand, and the district court awarded Plaintiffs $136,000 in "costs and attorneys fees relating to the foreign state and jurisdictional issues addressed in the supplemental briefings on appeal." *Id.* at 920. In other words, while the plaintiffs eventually had to return to state court, the district court reimbursed them for what they spent attempting to preserve their right to litigate in their adopted forum—the Southern District of New York.

The Second Circuit upheld this section 1447(c) award. *See id.* at 924 ("we are confident that the district court did not abuse its discretion..."). The court stated:

It may well be that, in practice, the statute ordinarily will operate to compensate plaintiffs who oppose removal. However, the statute as amended requires only that the costs and fees have been incurred 'as a result of the removal,' and does not make any specific mention of which party is to be compensated. The quoted language reinforces our belief that the new version of section 1447(c) affords the district courts a good deal of flexibility in dealing with unusual circumstances such as those presented in this case.

*Id.* at 924 n. 3.

If an award was justified in *Morgan,* it is surely justified here. First, the infer-

ence of forum shopping is stronger. In *Morgan,* the removing defendant never raised the issue of lack of jurisdiction—not even after suffering a $46 million judgment. Here, Allstate sought to remand— but only at a highly suspect moment, after several unfavorable rulings. Second, the competing inference of strategic delay is much weaker, if not non-existent. In *Morgan,* the plaintiffs sought to preserve jurisdiction only after winning a bench trial. Here, by contrast, Plaintiffs embarked on a steady course designed to remain in federal court, beginning well before any substantive rulings on the merits. For example, immediately after removal, Plaintiffs amended their complaint to include tort claims and to seek punitive damages. While the amendment did not get Plaintiffs over *Lindsey*'s jurisdictional hump, such action does negate the inference that Plaintiffs played fast and loose with the court.

The court also finds *Morgan* directly analogous in that the defendants in both cases removed erroneously and then suppressed relevant jurisdictional developments that were unknown to the court or the opposing party. At minimum, Allstate could have informed the court and the plaintiffs about the proceedings before the panel in *Morrison.*[11] *See United States v. Hersh,* 15 F.Supp.2d 1310, 1313–14 (S.D.Fla. 1998) (finding that counsel should have disclosed facts over which counsel had superior information); *Hardin v. City of Gadsden,* 821 F.Supp. 1446, 1449 (N.D.Ala.1993) (discussing duty of candor); *see also Cowan v. Combined Ins. Co. of Am.,* 67 F.Supp.2d 1312, 1315 (M.D.Ala. 1999) (denying motion for costs when litigants requested stay while Eleventh Circuit resolved similar jurisdictional issue in separate case).

Accordingly, the court finds that Plaintiffs may recover their expenses for developing legal arguments in opposition to Allstate's motion to remand, and attempting to preserve jurisdiction after Allstate's motion to dismiss, which was filed October 13, 2000. Allstate also will reimburse Plaintiffs for their expenses of attempting to recover fees under section 1447(c). Allstate filed several briefs contesting such an award, and the court finds that all resulting expenses were proximately caused by the improper removal. If not for the removal, Plaintiffs' expenses would never have been incurred. *See Gotro v. R & B Realty Group,* 69 F.3d 1485, 1486 (9th Cir.1995) (affirming award that included fees for preparing bill of costs).

Plaintiffs submitted a detailed bill, accompanied by an affidavit[12] attesting to the reasonableness of the "costs, and any actual expenses, incurred as a result of the removal" of this case. 28 U.S.C. § 1447(c). Allstate does not challenge this filing in any meaningful way. Accordingly, the court finds that Plaintiffs are entitled to $31,306.52.

## V. ORDER

It is CONSIDERED and ORDERED that Plaintiffs' just costs, actual expenses, and reasonable attorney's fees of $31,306.52, which were incurred as a result of the removal of this case, be and the same are hereby TAXED to Defendants, for which let execution issue. *See id.* Said sum shall be paid to Plaintiffs via certified check within 10 days of this Order.

---

**11.** *See supra* note 5 and accompanying text.

**12.** Waller Aff. (attached to Doc. No. 327).